**Donald Aaron SMITH, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 371-84.**

Court of Criminal Appeals of Texas, En Banc.

Nov. 27, 1985.

William A. Bratton, III, Dallas, for appellant.

Henry Wade, Dist. Atty. and Tom Streeter, Mary Ludwick and Andy Anderson, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

Appellant was convicted before a jury of the offense of murder. The jury sentenced appellant to fifty years confinement in the Texas Department of Corrections. The Fifth Court of Appeals affirmed the conviction. *Smith v. State*, 667 S.W.2d 836 (Tex. App.—Dallas 1984). We initially denied appellant's petition for discretionary review. However, upon appellant's motion for rehearing, we granted review to determine whether the trial court abused its discretion in restricting voir dire examination of the venire panel. We will reverse.

The Fifth Court of Appeals held that since the instant case was noncapital in nature wherein individual voir dire is within the trial court's discretion, no error was shown, citing *Robles v. State*, 627 S.W.2d 466 (Tex.App.—Houston [1st] 1981, no pet.). Additionally, the court below found that the action of the trial judge in controlling the voir dire did not demonstrate an abuse of discretion, citing *Cook v. State*, 398 S.W.2d 284 (Tex.Cr.App.1965), *cert den.*, 384 U.S. 966, 86 S.Ct. 1599, 16 L.Ed.2d 678 (1966).

Appellant was indicted on April 19, 1982, for intentionally and knowingly causing the death of his girlfriend by beating her with his fists and kicking her with his feet. The trial was held August 16–20, 1982. Appel-

lant, conceding the facts establishing the death of the victim, solely relied upon the defense of insanity. Appellant made this clear during voir dire and sought to question the venire panel so that he could intelligently exercise his peremptory challenges.

During voir dire, the trial court prevented appellant from questioning the venire panel individually about four different subjects: (1) materials they had read about the defense of insanity, (2) their exposure to any publicity about the instant case, (3) their thoughts about the defense of insanity, and (4) their thoughts about the purposes of punishment. The trial court limited appellant to determining, through group questioning, whether any members of the venire panel would be unable to follow the law in these four areas and serve as impartial jurors. Appellant argues the trial court's ruling unduly restricted his right to intelligently exercise peremptory challenges.

A defendant's constitutional right to counsel includes, inherently, under Article I, § 10, Tex. Const., the right of his counsel to question the members of the jury panel in order to intelligently exercise peremptory challenges. *Campbell v. State,* 685 S.W.2d 23 (Tex.Cr.App.1985); *Powell v. State,* 631 S.W.2d 169 (Tex.Cr. App.1982); *Mathis v. State,* 576 S.W.2d 835 (Tex.Cr.App.1979); *Mathis v. State,* 167 Tex.Cr.R. 627, 322 S.W.2d 629 (1959) and cases cited therein. A defendant's counsel must be allowed to interrogate the jury panel:

> "... to the end that he may form his own conclusion, after his personal contact with the juror, as to whether in counsel's judgment he [the juror] would be acceptable to him or whether, on the other hand, he should exercise a peremptory challenge to keep him [the juror] off the jury." [citations omitted] *Mathis,* 322 S.W.2d at 631.

As a general rule, the trial court should give a defendant great latitude in questioning the jury panel during voir dire. *Trevino v. State,* 572 S.W.2d 336 (Tex.Cr. App.1978). However, the trial court also can, and should, control the scope of voir dire by exercising his sound discretion to limit improper questioning. *Smith v. State,* 513 S.W.2d 823 (Tex.Cr.App.1974). See also *McManus v. State,* 591 S.W.2d 505, 520 (Tex.Cr.App.1980) (trial court can restrict duplicitous questioning); *Clark v. State,* 608 S.W.2d 667, 669 (Tex.Cr.App. 1980) (trial court can set reasonable time limits); *Abron v. State,* 523 S.W.2d 405, 408 (Tex.Cr.App.1975) (trial court can set reasonable time limits, restrict repetitious or vexatious questions, restrict questions asked in improper form, restrict questions directed at personal habits of jurors).

A trial court's decision to restrict voir dire may only be reviewed to determine whether the restriction constituted an abuse of discretion. *Smith,* supra. The test for reviewing a trial court's restriction of voir dire was recently reaffirmed: "If the question is *proper,* an answer denied prevents intelligent use of the peremptory challenge and harm is shown." [1] *Powell,* supra at 170, quoting *Mathis,* 576 S.W.2d at 837. See also *Smith,* supra. Therefore, to show an abuse of discretion, a defendant must demonstrate that the question he sought to ask was proper. If the question was proper and the defendant was prevented from asking it, then harm is presumed because the defendant could not intelligently exercise his peremptory challenges without the information gained from an answer.

A question is proper if it seeks to discover a juror's views on an issue applicable to the case. *Powell,* supra; *Smith,* supra; *Mathis,* 322 S.W.2d at 632. In *Smith,* supra, the defendant sought to ask the jury panel whether they could consider probation as a proper punishment in a prosecution for murder. This Court held:

1. All emphasis hereinafter is supplied by the author of this opinion unless otherwise indicated.

"The permissible areas of interrogation to determine the use of peremptory challenges are broad and not to be unnecessarily limited. Asking about bias against parts of the range of punishment is certainly permissible. *Indeed, bias against any of the law upon which the defendant is to rely is ground for a challenge for cause and is a proper matter for query.* [citations omitted]." Id., at 826.

In *Mathis,* supra, the defendant was being prosecuted for possession of liquor for the purpose of sale in a dry area. The defendant attempted "to ask the entire panel whether or not any member thereof felt it morally wrong for a person to have in his possession an alcoholic beverage for his own use." Id., at 631. This Court held:

"It must be remembered that it was [defendant's] sole defense that he possessed the liquor for his own use, which the law authorized him to do. Upon its face, the question sought to be asked the jurors was pertinent to the [defendant's] defense." Id., at 632.

A question, therefore, is proper when it seeks to discover a juror's views relative to a defendant's defense. We now review the four questions appellant's counsel attempted to ask to determine whether they were proper.

The first question sought to determine what materials certain jury panel members had read recently about the defense of insanity. Before attempting to ask the first question, appellant asked the venire panel:

"Have you read something in the paper that discusses the pros and cons or just anything regarding the defense of insanity? ... I understand what times are like right now. That's the reason I am asking the question." [2]

After several panel members raised their hands, appellant attempted to question them individually as to what materials they had actually read. The trial court denied appellant the opportunity to question them individually at the bench or from their seats.

Appellant relied solely on the defense of insanity in his trial. In addition, there had recently been widespread publicity on the Hinckley insanity defense. Appellant only sought to question those individuals who indicated that they had read material on the insanity defense. Under those circumstances, appellant was entitled to know what materials the jury panel had read. Without such information, appellant could not intelligently exercise his peremptory challenges. The question was proper and, therefore, should have been allowed.

The second question sought to determine what potential jurors knew about the instant case from pretrial publicity. Before attempting to ask this question, appellant's counsel asked the panel: "Is there anyone who has read or heard something or has some personal knowledge of the facts of this offense?" After several members of the panel raised their hands, counsel attempted to question them individually at the bench. The trial judge postponed the questioning, but later changed his mind and restricted counsel to questioning the panel "collectively." The trial judge then intervened and questioned the panel collectively, only to determine whether publicity had affected the panel's ability to be impartial.

Appellant was entitled to know what specific knowledge the panel might have concerning the instant case through pretrial publicity. Appellant only sought to question those individuals who indicated that they already had knowledge of the instant case. Such a question is proper and, therefore, should have been allowed.

2. Appellant's trial was held soon after John Hinckley's trial for the attempted assassination of President Reagan. See *United States v. Hinckley,* 672 F.2d 115 (D.C.Cir.1982). Appellant apparently was concerned about the public reaction against the insanity defense as a result of Hinckley's acquittal. Earlier in the voir dire, a juror who was excused for cause had confirmed that concern by stating: "I have a lot of personal emotional feelings about the Hinckley defense situation."

In his third question, appellant sought to ask every juror individually what "their thoughts" were on the insanity defense. The trial court denied appellant the opportunity to question the panel individually on this query.

"Voir dire examination can become the lengthiest part of the proceeding. To curb some prolixity, it is recognized that courts need have a discretionary area within which the examination might be reasonably limited." *Smith,* supra at 827. Otherwise, a trial court is forced to allow a defendant to ask an endless number of questions, so long as the questions show some relevance to the issues raised at the trial. Therefore, a trial judge can exercise his discretion to prevent an improperly phrased question from being asked when it threatens to duplicate earlier questions, or presents so broad a question as to constitute a global fishing expedition. See *Smith,* supra; *McManus,* supra; *Abron,* supra.

Asking every member of the panel individually for his or her "thoughts" on the insanity defense presents just such an expedition. Such a question does not seek particular information from a particular panel member; rather, it presents a general topic for discussion. The discussion, without more specific focus, could become unnecessarily lengthy. In addition, such a discussion would become duplicative of the areas covered by appellant's prior questions.

Appellant did not attempt to ask a more restrictive question, nor did he attempt to direct the question at particular jurors because of some earlier response. Under these circumstances, the trial judge correctly restricted appellant from asking every juror for his or her "thoughts" on the insanity defense because the question, as phrased, was improperly broad and duplicitous.

In his fourth question, appellant sought to question the jury panel on their "idea of punishment" and "what they think its purpose should be." Appellant was charged with murder and had filed a motion for probation. We have held that a question "concerning the punishment philosophy of the jurors [is] a proper question." *Powell,* supra. See also *Campbell,* supra. Therefore, the trial court should have allowed appellant to ask this question.

We hold that the trial court abused its discretion in not allowing appellant to ask three of the four questions outlined herein. In addition, we find that, although time constraints on voir dire are a legitimate concern of a trial judge, the paramount concern in a case such as this must be the appellant's freedom to intelligently exercise his peremptory challenges. We cannot improve upon our Presiding Judge's observation:

> "It is always commendable for a trial court to dispatch business with promptness and expedition, but this salutary result must never be attained at the risk of denying to a party on trial a substantial right." *De La Rosa v. State,* 414 S.W.2d 668, 672 (Tex.Cr.App.1967), quoting *Carter v. State,* 100 Tex.Cr.R. 247, 272 S.W. 477 (1925).

The judgments of the court of appeals and the trial court are reversed and the cause remanded to the trial court.

TOM G. DAVIS and WHITE, JJ., concur.

ONION, P.J., and McCORMICK, J. dissent.