Edwin Roy **DRINKERT**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 13-87-405-CR.

Court of Appeals of Texas, Corpus Christi.

Aug. 31, 1988.

Walter Boyd, Houston, for appellant.

Thomas L. Bridges, Dist. Attys. Office, Sinton, for appellee.

Before DORSEY, UTTER and KENNEDY, JJ.

OPINION

DORSEY, Justice.

A jury found appellant, Edwin Drinkert, guilty of murder and assessed punishment at fifteen years' imprisonment. Appellant presents two points of error on appeal. We reverse and remand.

Appellant was indicted on June 17, 1986, for intentionally and knowingly causing the death of Thomas Mason by shooting him with a rifle. The case received extensive publicity and was tried on August 4, 1986.

Appellant contends by his first point of error that the trial court erred in refusing to permit his attorney to ask particular panel members during voir dire what they had heard or read about the case for the purpose of exercising peremptory challenges.

A defendant's constitutional right to counsel under Tex.Const. art. I, § 10 inherently includes his counsel's right to question the prospective jurors in order to intelligently exercise peremptory challenges. *Mathis v. State*, 576 S.W.2d 835, 836–37 (Tex.Crim.App.1979).

Our review of the trial court's decision regarding the restriction of voir dire is limited to a determination of whether the restriction constituted an abuse of discretion. *Smith v. State*, 703 S.W.2d 641, 644 (Tex.Crim.App.1985). To show an abuse of discretion, appellant must demonstrate that the question he sought to ask was proper and that the trial court prevented him from asking it. *Id.* A question is "proper" if it seeks to discover a juror's views on an issue applicable to the case. *Id.*

The complained-of error is contained in the following exchange, which took place between the trial court and appellant's attorney shortly before voir dire:

MR. BOYD: I have got a right to ask every one of the jurors what they have read or heard about this case, and I would like to have that done outside the

presence of the other jurors. I imagine that half of them—

THE COURT: I think I distinctly remember my ruling on that one.

MR. BOYD: I remember it too, Judge, and I—I would like to have you reconsider your ruling on that.

THE COURT: Well, you can ask them if they have read anything that's influenced them, and if you get an affirmative response along those lines, then we will consider having them come up individually and discuss it with them.

MR. BOYD: Well, I—okay. I am going to anticipate—

THE COURT: In other words, do they know anything about it, how did they acquire the knowledge, and where did they acquire the knowledge, and then if they have acquired knowledge about the facts of it or what purports to be the facts, then ask them in the terms of the challenge for cause whether or not they have formed an opinion as a result of that. You can do it generally without going into the thing.

MR. BOYD: Well, are you saying you will not let me go into the facts?

THE COURT: *I am telling you I will not let you go into the facts of what each individual juror says they know or don't know about the case.*

\* \* \* \* \* \*

MR. BOYD: I want to ask about, I want to ask them specifically, each one that has read or heard about it, I want to ask them what they have heard, not just where they derived their information from, but what they heard, the substance of it, what they heard or read.

THE COURT: Well, I will—

MR. BOYD: For purposes of exercising peremptory challenges.

THE COURT: *No. I won't let you go—I won't let you ask anybody that has read anything about the case specifically what they read about it.*

MR. BOYD: Okay. Can I have a running objection and a running ruling on that, Your Honor?

THE COURT: You certainly may. (emphasis ours).

The instant case is factually quite similar to *Smith v. State,* which also involved a defendant on trial for a highly publicized murder. In *Smith,* the defense counsel sought to determine which potential jurors knew about the case from pretrial publicity. He initially asked all the panel members collectively whether any of them had "read or heard" anything about the facts of the offense. After "several" veniremen raised their hands, counsel asked the court for permission to question them individually at the bench. The trial judge denied the request, and restricted counsel to questioning the panel collectively and only for the purpose of determining whether the publicity had affected the panel's ability to be impartial.

The Court of Criminal Appeals held:

Appellant was entitled to know what specific knowledge the panel might have concerning the instant case through pretrial publicity. Appellant only sought to question those individuals who indicated that they already had knowledge of the instant case. Such a question is proper and, therefore, should have been allowed.

*Smith,* 703 S.W.2d at 644.

The State attempts to distinguish *Smith* by pointing out that appellant's counsel proposed to personally examine not just "several" but as many as *forty-three* veniremen; hence, the trial judge properly limited the voir dire in the interest of judicial economy. We disagree. Although time constraints are a legitimate concern of a trial judge, we cannot say that such considerations justified the denial of appellant's broad constitutional right to intelligently exercise his peremptory challenges. *See Smith,* 703 S.W.2d at 645; *Mathis,* 576 S.W.2d 836–37. Moreover, we must presume that the trial court's error was harmful under Tex.R.App.P. 81(b)(2). *See Smith,* 703 S.W.2d at 643. Appellant's first point of error is sustained.

■ Point two states there was "insufficient notice to appellant to support the finding of a deadly weapon."

In response to a special issue contained in the punishment charge, the jury found

that appellant used a deadly weapon during the commission of the charged offense. Citing as authority *Ex Parte Patterson*, 740 S.W.2d 766 (Tex.Crim.App.1987), appellant contends that this finding should be deleted since Paragraph I of the indictment (on which the State elected to proceed) does not specifically allege the use of a "deadly weapon."

Paragraph I reads:

EDWIN ROY DRINKERT ... did then and there ... while intending to cause serious bodily injury to an individual, Thomas Mason, intentionally and knowingly commit an act clearly dangerous to human life by *shooting at the said Thomas Mason with a rifle,* thereby causing the death of the said Thomas Mason. (emphasis ours).

The Court of Criminal Appeals has held that a 30–30 calibre rifle is a deadly weapon *per se. Bravo v. State*, 627 S.W.2d 152, 156 (Tex.Crim.App.1982). The question now arises whether a less powerful rifle, such as the one appellant used, should also be considered a deadly weapon.

A "pistol" has consistently been held to be a deadly weapon *per se* regardless of its calibre. *See Giles v. State*, 617 S.W.2d 690, 691 (Tex.Crim.App.1981); *Jackson v. State*, 548 S.W.2d 685, 696 (Tex.Crim.App. 1977). We therefore conclude that the *Bravo* holding applies with equal force to the rifle referred to in Paragraph I of the indictment. Appellant therefore had sufficient notice to uphold the complained-of finding. Point two is overruled.

In view of our disposition of appellant's first point of error, we REVERSE the judgment of the trial court and REMAND the cause for new trial.