Michael Lynn COON, Appellant,

v.

The STATE of Texas, State.

No. 2–92–387–CR.

Court of Appeals of Texas,
Fort Worth.

Feb. 15, 1994.

Malcolm Dade, Dallas, for appellant.

Bruce Isaacks, Crim. Dist. Atty., Jim E. Crouch, Asst. Dist. Atty., Denton, for appellee.

Before WEAVER, HICKS and FARRAR, JJ.

## OPINION

FARRAR, Justice.

Appellant, Michael Lynn Coon, appeals his misdemeanor conviction of obscenity for the sale of a homosexual magazine entitled "Stroke, Volume 11, Number 1." TEX.PENAL CODE ANN. § 43.23(c) (Vernon 1989). The jury assessed punishment at six months confinement and a $3,000 fine.

We affirm.

In four points of error, appellant complains: the trial court abused its discretion by restricting the scope of appellant's voir dire; the evidence was insufficient to support the jury's verdict; the charge failed to instruct the jury that materials directed towards a deviant group must be judged with reference to that group; the trial court failed to instruct the jury to determine the community standard concerning obscenity before reaching the merits of the case. We will first address appellant's points of error regarding the charge in that our discussion regarding what constitutes a proper charge will provide the framework for our consideration of appellant's points of error regarding voir dire and sufficiency of the evidence.

■ In points of error number three and four, appellant asserts the trial court erred in failing to charge the jurors that material directed toward a deviant group must be judged with reference to that audience. Relying on *Mishkin,* appellant asserts that sexually explicit material depicting deviant sexual acts *cannot* be judged by what the "average person" standard. *See Mishkin v. New York,* 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966). Appellant further contends the charge was inconsistent, confusing and ambiguous. In addition, appellant argues the trial court erred in failing to instruct the jury that it must first determine, beyond a reasonable doubt, the community standard for obscenity before deciding whether the magazine in this case was obscene, and if unable to do so, it must acquit.

First, we note, contrary to appellant's assertion, the charge did instruct the jury to judge the material with reference to a specially susceptible audience, such as homosexuals, if it appeared from the character of the material or the circumstances of its dissemination that the subject matter was designed for that group. The charge also instructed the jury that it must first determine what constituted the contemporary community standard before determining whether the average person would find the material obscene.

The jury charge provided:

If it appears from the character of the material or the circumstances of its dis-semination that the subject matter is designed for a specially susceptible audience, such as homosexuals, *the appeal of the subject matter shall be judged with reference to such audience.* [Emphasis added.]

. . . .

In deciding whether the material as a whole appeals to the prurient interest and whether the sexual conduct is portrayed in a patently offensive way, the jury must avoid subjective personal and private views in determining community standards and, instead, *evaluate what judgment would be made by a hypothetical average adult person applying the collective view of the adult community as a whole.* [Emphasis added.]

. . . .

In determining whether or not the material, if any, at issue is obscene, the jury must *first determine whether or not the content of the material affronts contemporary community standards of decency to the point of being patently offensive to the average person in the community.* Next, after examining the whole of the material, you must determine whether or not the average person applying contemporary community standards would find the material appeals to a prurient interest in sex as previously defined . . . . [Emphasis added.]

Appellant asserts that sexually explicit material depicting deviant sexual acts *cannot* be judged by the "average person" standard. *See Mishkin,* 383 U.S. at 502, 86 S.Ct. at 958, 16 L.Ed.2d at 56. Appellant misconstrues the essence of *Mishkin. Mishkin* re-affirmed that in most circumstances, the standard enunciated by *Roth* applies; that is whether the average person, applying contemporary community standards, would find the dominant theme of the material, taken as a whole, appeals to prurient interest. *Mishkin,* 383 U.S. at 508–09, 86 S.Ct. at 963–64, 16 L.Ed.2d at 61–62, *citing Roth v. United States,* 354 U.S. 476, 489–90, 77 S.Ct. 1304, 1311–12, 1 L.Ed.2d 1498, 1509–10 (1957); *see also Miller v. California,* 413 U.S. 15, 25, 93 S.Ct. 2607, 2615, 37 L.Ed.2d 419, 431 (1973). Rather than restricting the test for obscenity, *Mishkin* broadened it in those instances

where the material would not appeal to the prurient interest of the average person and instead would disgust and sicken. *Mishkin*, 383 U.S. at 508–09, 86 S.Ct. at 963–64, 16 L.Ed.2d at 61–62. Noting that in those instances, the materials would not be obscene under *Roth*, the *Mishkin* court articulated an additional standard for those instances where the materials were directed to a deviant group. *Id.* In those instances, it is sufficient that the material appeal only to the prurient interest of the targeted deviant group. *Id.*

Utilizing the standards enunciated in *Roth* and *Mishkin*, and re-affirmed in *Miller*, we conclude the jury charge was a substantially correct statement of the law. The jury was instructed to judge the material with reference to the targeted audience and then evaluate the material from the viewpoint of the average adult person, applying contemporary community standards, to determine whether it appealed to a prurient interest, and apply this same standard to determine if the material was offensive and lacking recognized merit. Moreover, we note the charge largely tracked the State's statutory definition of obscenity, patterned after *Miller*. TEX.PENAL CODE ANN. § 43.21 (Vernon 1989); *Miller*, 413 U.S. at 25, 93 S.Ct. at 2615, 37 L.Ed.2d at 431. The charge is substantively the same as an instruction previously upheld on appeal. *Johnson v. State*, 760 S.W.2d 797, 800 (Tex.App.—Dallas 1988, no pet.).[1]

Appellant has cited no authority to the effect that the jury must acquit if unable to concur regarding what constitutes the community standard. The sole case, upon which he relies as primary authority, addresses the exclusion of evidence relevant to community standards, not a proper jury charge. *See Carlock v. State*, 609 S.W.2d 787, 789 (Tex. Crim.App. [Panel Op.] 1980). Because we find the trial court properly instructed the jury, we overrule appellant's third and fourth points of error.

In his first point of error, appellant contends the trial court abused its discretion by restricting the scope of appellant's voir dire. Appellant asserts the trial court's rulings prevented him from intelligently exercising his peremptory strikes and discovering possible challenges for cause.

During voir dire, appellant made the statement that "[t]he average or the norm is heterosexual" and carried the theme throughout voir dire that homosexuality is not average. Appellant inquired whether any panel member knew one or more homosexuals; if a panel member would have any trouble in determining what the appeal of the material would be in reference to a homosexual audience. Appellant was permitted to solicit agreement from a panel member that a homosexual was not "the average person" and that homosexual material is offensive to the average male. He then inquired if the panel member could find the material "not guilty" if it failed to meet the statutory definition of obscenity even though the panel member found the material offensive. In addition, appellant asked whether or not the potential jurors could put aside any personal feelings they might have about homosexual material and determine whether the material met the legal definition of obscene.

The trial court sustained the State's objections to the following questions: if a panel member knew the attitudes held by homosexuals toward sexually explicit material and whether homosexuals' attitudes about sexually explicit materials differed from the average person's attitudes. The State objected to each of these inquiries stating the attitude of homosexuals is not the test for obscenity and stating the appropriate test is stated in terms of the average adult Texan using contemporary community standards. Appellant contends the trial court sustained the State's objection to a question asking whether a potential juror thought homosexuals are sick or perverse or have an unhealthy interest in sex. This is inaccurate. Appellant received a response to this question; the juror nodded his head in agreement. The State objected to an inquiry regarding whether the material would appeal to a deviant group's prurient interest on the grounds that it is not neces-

1. We note this issue, which arose out of near identical facts involving the same parties as in the instant case, was recently resolved in *Coon v. State*, No. 02–92–114–CR (Tex.App.—Fort Worth Dec. 21, 1993) (not designated for publication).

sary for jurors to have an understanding of deviant group interests. The trial court sustained each of these objections.

■ A defendant has an inherent constitutional right to question the members of the jury panel in order to intelligently exercise peremptory challenges. *Smith v. State,* 703 S.W.2d 641, 643 (Tex.Crim.App.1985); *T.K.'s Video, Inc. v. State,* 832 S.W.2d 174, 176 (Tex.App.—Fort Worth 1992, pet. ref'd); TEX. CONST. art. I, § 10. However, the conduct of the voir dire rests within the sound discretion of the trial court. *Dowden v. State,* 758 S.W.2d 264, 274 (Tex.Crim.App. 1988); *Spears v. State,* 801 S.W.2d 571, 578 (Tex.App.—Fort Worth 1990, pet. ref'd). If the question is proper, harm is presumed because the defendant is precluded from intelligently exercising his peremptory challenges, having been denied disclosure of a juror's views on an issue relevant to the case. *Smith,* 703 S.W.2d at 643. Nonetheless, the trial court can and should control the scope of voir dire by exercising its sound discretion to limit improper questions. *Id.* There is no abuse of discretion when trial counsel is prevented from asking an improper question. *Id.*

■ In the instant case, appellant was given wide latitude in questioning the jury panel regarding the members' ability to apply the law to the magazine at issue and whether the panel members could put aside their personal feelings regarding homosexual material. These questions were proper as they allowed inquiry into the panel members' views on issues relevant to the case. However, appellant's questions regarding homosexuals' attitudes towards sexually explicit material and whether their attitudes differ materially from the average person's attitudes are of no consequence and might tend to confuse the jury panel, and did in fact momentarily confuse two panel members, regarding the standard applicable to the determination of obscenity. The attitude of homosexuals is not the test for obscenity. *See Miller,* 413 U.S. at 33, 93, 93 S.Ct. at 2620, 37 L.Ed.2d at 436. As was discussed at length in points of error three and four, the test is whether the material appeals to a prurient interest of the average adult Texan using contemporary community standards. *Id.; Johnson,* 760 S.W.2d at 800; TEX.PENAL CODE ANN. § 43.21 (Vernon 1989). In addition, the State is correct in its contention that it is not necessary for jurors to have an understanding of deviant group interests; the pornography speaks for itself. *See Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 56, 93 S.Ct. 2628, 2634, 37 L.Ed.2d 446, 456 (1973). We conclude the trial court was correct in sustaining the State's objections to these questions and overrule point of error number one.

■ In his second point of error, appellant contends the evidence was insufficient to sustain the conviction because no evidence was introduced showing the magazine was unacceptable to the members of the homosexual community. Once again, we note this is not the correct standard. *See Miller,* 413 U.S. at 24, 93 S.Ct. at 2615, 37 L.Ed.2d at 431; *Johnson,* 760 S.W.2d at 800; TEX.PENAL CODE ANN. § 43.21 (Vernon 1989).

■ When reviewing a challenge to sufficiency, the evidence is viewed in the light most favorable to the verdict. *Flournoy v. State,* 668 S.W.2d 380, 383 (Tex.Crim.App. 1984). The critical inquiry is whether, after viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Bonham v. State,* 680 S.W.2d 815, 819 (Tex. Crim.App.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985); *Wilson v. State,* 654 S.W.2d 465, 471 (Tex.Crim.App. 1983) (opinion on reh'g) (overruled on other grounds).

At trial, the magazine, "Stroke, Volume 11, Number 1," was placed in evidence. The magazine contained photographs and illustrations of homosexual oral and anal sex and group sex between males. The officer who purchased the magazine and a second police officer testified that in their opinion, the average adult Texan would find the magazine appealed to prurient interests, was patently offensive and lacked literary, artistic, political and scientific merit.

Appellant correctly contends the appeal of the material should be *judged* in accordance with the "sexually deviant group" standard enunciated in *Mishkin.* He further asserts,

however, the police officers' personal opinions are not enough to establish the material appealed to the prurient interests of the "sexually deviant group" to which the materials were directed. He argues the jurors must be provided with some proof of prurient stimulation of a deviant segment of society whose reaction is not a matter of common knowledge. *United States v. Klaw,* 350 F.2d 155 (2nd Cir.1965).[2]

■ We disagree. Jurors in obscenity cases do not need the assistance of experts or testimony from members of the deviant group unless the contested materials are directed at such a bizarre deviant group that the experience of the trier of fact would be plainly inadequate from which to judge whether the materials appeal to a prurient interest. *Paris Adult Theatre I,* 413 U.S. at 56 n. 6, 93 S.Ct. at 2634 n. 6, 37 L.Ed.2d at 456 n. 6. It is generally not necessary for the jury to have an understanding of that group's interests, prurient or otherwise, when assessing hard core pornography intended to appeal to a particular deviant audience; the pornography speaks for itself. *See Paris Adult Theatre I,* 413 U.S. at 56, 93 S.Ct. at 2634, 37 L.Ed.2d at 456; *United States v. Thomas,* 613 F.2d 787, 790–91 n. 2, 793–94 (10th Cir.) (child pornography), *cert. denied,* 449 U.S. 888, 101 S.Ct. 245, 66 L.Ed.2d 114 (1980); *United States v. Young,* 465 F.2d 1096, 1098–99 (9th Cir.1972) (graphic detailing of heterosexual intercourse, fellatio, cunnilingus, anal intercourse, sodomy, masturbation, and oral-anal contact); *United States v. Wild,* 422 F.2d 34, 36 (2d Cir.1969) (homosexual materials), *cert. denied,* 402 U.S. 986, 91 S.Ct. 1644, 29 L.Ed.2d 152 (1971). After viewing the evidence, we conclude a rational trier of fact could have found the materials to be obscene, beyond a reasonable doubt, without the assistance of an expert or testimony from a member of the deviant group and we overrule point of error two.

Because we find no error, the trial court's judgment is affirmed.