COURT 
OF APPEALS
SECOND 
DISTRICT OF TEXAS
FORT 
WORTH
 
NO. 
2-01-298-CR
 
PHILLIP 
EARL LYDIA                                        
       APPELLANT
 
V.
 
THE 
STATE OF TEXAS                                                 
STATE
 
------------
 
FROM 
THE 213TH DISTRICT COURT OF TARRANT COUNTY
 
------------
 
OPINION 
ON REMAND
 
------------
        Appellant 
Phillip Earl Lydia appeals from a jury verdict finding him guilty of aggravated 
robbery causing bodily injury to a disabled person. The jury sentenced appellant 
to eighteen years' imprisonment. We affirm.
Factual 
and Procedural Background
        Appellant’s 
issue on appeal concerns questions that the prosecutor asked during voir dire. 
Thus, we will only include the facts relevant to the issue. 


        During 
voir dire, the prosecutor asked the entire panel, “Do each of you feel as 
though you could evaluate a witness and his testimony and decide if he’s being 
truthful without automatically dismissing his testimony because of some criminal 
history?” Lydia, 109 S.W.3d at 496. Appellant objected to this 
question. Id. The trial court overruled the objection, but granted 
appellant a running objection to the question. Id. The prosecutor 
repeated the question, in various forms, to members of the panel on a group and 
individual basis. Id. at 496-97. The prosecutor further expanded on the 
hypothetical by asking one of the jurors if it would make a difference if the 
crime committed by the witness was against the defendant. Id. at 497. 
Appellant objected again, but the trial court overruled the objection and 
granted appellant a running objection. Id. The jury later found appellant 
guilty, and the court sentenced him to eighteen years’ imprisonment.
        In 
appellant’s sole point on appeal, he complained that the prosecutor improperly 
attempted to bind prospective jurors to a specific factual situation during voir 
dire contrary to the court of criminal appeals' pronouncement in Standefer v. 
State. 59 S.W.3d 177, 181-82 (Tex. Crim. App. 2001). We held that the 
prosecutor’s questions were not commitment questions because they did not ask 
the prospective jurors to resolve or refrain from resolving any issue. Lydia, 
81 S.W.3d at 49. Because we answered this question negatively, we did not reach 
the second or third prongs of the Standefer test for commitment 
questions. Id.
        The 
court of criminal appeals granted appellant’s petition for discretionary 
review to determine “whether the State improperly attempted to bind 
prospective jurors to specific factual situations during the voir dire 
examination, contrary to this court’s determination in Standefer.” Lydia, 
109 S.W.3d at 496. The court held that the prosecutor’s questions did in fact 
ask jurors to resolve issues concerning witness credibility on the basis of 
particular facts; therefore, they were commitment questions. Id. at 499. 
The court of criminal appeals then vacated and remanded the case for further 
analysis under the remaining prongs of the Standefer test for improper 
commitment questions. Id. at 500.
Discussion
        The 
trial court has broad discretion over the process of selecting a jury. Barajas 
v. State, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002); Allridge v. State, 
762 S.W.2d 146, 167 (Tex. Crim. App. 1988), cert. denied, 489 U.S. 1040 
(1989). The main reason for this is that voir dire could go on forever without 
reasonable limits. Faulder v. State, 745 S.W.2d 327, 334 (Tex. Crim. App. 
1987). We leave to the trial court's discretion the propriety of a particular 
question, and the trial court's discretion will not be disturbed absent an abuse 
of discretion. Barajas, 93 S.W.3d at 38; Allridge, 762 S.W.2d at 
163; Faulder, 745 S.W.2d at 334.
        The 
general rule has been that it is improper to ask a commitment question during 
voir dire because it would amount to an improper attempt to bind a juror. See 
Allridge v. State, 850 S.W.2d 471, 480 (Tex. Crim. App. 1991), cert. 
denied, 510 U.S. 831 (1993). In Standefer, the court of criminal 
appeals held that during voir dire a trial court should first determine if a 
question is a commitment question. 59 S.W.3d at 181-82. If it is a commitment 
question, then the court must decide whether it is nevertheless a proper 
question. Id. For it to be a proper commitment question, one of the 
possible answers to the question must give rise to a valid challenge for cause. Id. 
However, even if a question meets the “challenge for cause” requirement, the 
inquiry does not end there. Id. at 182. A proper commitment question must 
also contain only those facts necessary to test whether a prospective 
juror is challengeable for cause. Id.
        The 
code of criminal procedure allows either side to challenge a juror for cause 
when the challenging side can show the juror is incapable or unfit to serve on 
the jury. Tex. Code Crim. Proc. Ann. 
art. 35.16 (Vernon 1989 & Supp. 2003). The rule lists many specific 
challenges, but also allows a juror to be challenged for cause if either side 
can show “[t]hat he has a bias or prejudice in favor of or against the 
defendant.” Id. art. 35.16(a)(9). The court of criminal appeals has 
held that a member of the venire may be properly challenged for cause and 
removed “if he cannot impartially judge the credibility of a witness.” Ladd 
v. State, 3 S.W.3d 547, 560 (Tex. Crim. App. 1999), cert. denied, 529 
U.S. 1070 (2000). Potential jurors “must be open-minded and persuadable, with 
no extreme or absolute positions regarding the credibility of any 
witness.” Id. While a defendant does not have a right to have a 
particular juror sit on his jury, he does have the right “not [to] have 
a particular venire member on the jury if the venire member is 
challengeable for cause or the defendant exercises one of his peremptory 
challenges.” Johnson v. State, 43 S.W.3d 1, 6-7 (Tex. Crim. App. 
2001).
Application
        In 
this case, the prosecutor asked the entire venire panel whether it could fairly 
evaluate a witness and his testimony if the witness, here the victim, had a 
criminal history. The prosecutor repeatedly asked the same question of 
prospective jurors who indicated they might have a concern with this type of 
witness testimony. The prosecutor also asked whether the prospective jurors 
could fairly evaluate such a witness who had been convicted of crimes against 
the actual defendant on trial. Two jurors who gave specific statements in 
response to these questions were seated on the jury.
        Because 
the questions are commitment questions, we must first determine if one of the 
possible answers to the questions would give rise to a valid challenge for 
cause. See Standefer, 59 S.W.3d at 182. By asking the questions, the 
prosecution was trying to learn if any of the prospective jurors would not 
impartially judge the credibility of the witness or if any of them had 
“extreme or absolute positions regarding the credibility of any witness” 
based on the witness’s potential criminal history. Ladd, 3 S.W.3d at 
560. The possible answers to these questions would lead to a challenge for cause 
under article 35.16(a)(9) based on a juror’s bias. Tex. 
Code Crim. Proc. Ann. art. 35.16(a)(9); Ladd, 3 S.W.3d at 560 
(holding that a prospective juror may be properly challenged for cause and 
removed if he cannot impartially judge the credibility of a witness); see 
also Rivera v. State, 82 S.W.3d 64, 66-67 (Tex. App.—San Antonio 2002, 
pet. ref’d) (stating that if a prospective juror responded to a question by 
stating that he would automatically disbelieve a defendant’s testimony simply 
because he was the defendant, that person would be stricken for cause). Thus, 
the questions meet the second Standefer prong for proper commitment 
questions. We further conclude that the questions meet the third Standefer 
prong because they contain only those facts necessary to test whether a 
prospective juror is challengeable for cause. Standefer, 59 S.W.2d at 
182. 

 Accordingly, 
 we overrule appellant’s sole point.
Conclusion
        Having 
overruled appellant’s sole point, we affirm the trial court’s judgment.
 
 
                                                          TERRIE 
LIVINGSTON
                                                          JUSTICE
 
 
PANEL 
B:   LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.
 
DAUPHINOT, 
J. filed a concurring opinion.
 
PUBLISH
 
DELIVERED: 
September 11, 2003
 

 
 
COURT 
OF APPEALS
SECOND 
DISTRICT OF TEXAS
FORT 
WORTH
 
NO. 
2-01-298-CR
 
 
PHILLIP 
EARL LYDIA                                                       APPELLANT
 
V.
 
THE 
STATE OF TEXAS                                                      STATE
 
------------
 
FROM 
THE 213TH DISTRICT COURT OF TARRANT COUNTY
 
------------
 
CONCURRING 
OPINION ON REMAND
 
------------
        This 
court, in its original opinion, recognized a litigant’s right to ask questions 
for the purpose of the intelligent exercise of peremptory challenges. 
 

 The 
 Court of Criminal Appeals reversed, essentially holding that a litigant has no 
 right to ask questions for the purpose of the intelligent exercise of 
 peremptory challenges if those questions would not reveal grounds for a 
 challenge for cause. 


        Texas 
has long recognized the importance of both voir dire and the intelligent 
exercise of peremptory challenges in both civil and criminal cases. 
 

 In 
 the past, the Court of Criminal Appeals explained,
 
Each 
party must have the right to question potential jurors in their own individual 
manner to emphasize a point or uncover a hidden bias and may not be forced to 
rely on other parties to ask similar questions.
 
                . 
. . .
 
The 
second prong [of the test used to determine whether the trial court abused its 
discretion in limiting voir dire] asks whether the questions the party was not 
permitted to ask were proper voir dire questions. A question is proper if its 
purpose is to discover a juror's views on an issue applicable to the case. The 
trial court must not restrict proper questions which seek to discover a juror's 
views on an issue applicable to the case. 


 
        The 
Court significantly limited the right of a criminal defendant to ask questions 
for the purpose of exercising peremptory challenges, however, in Standefer. 
 

 This 
 limitation was accomplished by addressing the nature and propriety of 
 “commitment questions.” The Court explained that “[w]hen the law requires 
 a certain type of commitment from jurors, the attorneys may ask the prospective 
 jurors whether they can follow the law in that regard.” 

 The 
 Court continued,
  
However, 
where the law does not require the commitment, a commitment question is 
invariably improper. For example, a prospective juror is not challengeable for 
cause simply because he does not consider a particular type of evidence to be 
mitigating. 


 
The 
inquiry does not end there:
 
Even 
if a question meets this challenge for cause requirement, however, the question 
may nevertheless be improper if it includes facts in addition to those 
necessary to establish a challenge for cause. 


 
As 
the Court pointed out, “[T]o be proper, then, a commitment question must 
contain only those facts necessary to test whether a prospective juror is 
challengeable for cause.” 


        The 
Court then summarized the test for determining the propriety of a particular 
commitment question:
 
So, 
the inquiry for improper commitment questions has two steps: (1) Is the question 
a commitment question, and (2) Does the question include facts—and only those 
facts—that lead to a valid challenge for cause? If the answer to (1) is 
"yes" and the answer to (2) is "no," then the question is an 
improper commitment question, and the trial court should not allow the question. 
 


 
        In 
Standefer, then, the Court of Criminal Appeals held that a question is a 
"commitment question" if one or more of the possible answers is that a 
prospective juror would resolve or refrain from resolving an issue in the case 
on the basis of one or more facts contained in the question, overruling Maddux 
v. State. 


        As 
Judge Price noted in his dissent from Standefer,
 
 
In 
Babcock v. Northwest Memorial Hospital . . . the Texas Supreme Court addressed 
whether the trial court had impermissibly restricted a litigant from asking 
about potential bias or prejudice toward tort reform. In that case the Court 
explained the purpose of voir dire and the origin of the right to ask questions.
 
This 
right is based on the fundamental right to trial by a fair and impartial jury. 
We hold that the trial court abused its discretion by refusing to allow the 
Babcocks to question the jurors about the alleged "lawsuit crisis." A 
broad latitude should be allowed to a litigant during voir dire examination. 
This will enable the litigant to discover any bias or prejudice by the potential 
jurors so that peremptory challenges may be intelligently exercised. Although we 
recognize that voir dire examination is largely within the sound discretion of 
the trial judge, a court abuses its discretion when its denial of the right to 
ask a proper question prevents determination of whether grounds exist to 
challenge for cause or denies intelligent use of peremptory challenges.
 
Voir 
dire is not only to ferret out potential jurors who are challengeable for cause, 
but also to make intelligent use of peremptory challenges.
 
Followed 
to its logical conclusion, the majority's opinion allows parties to exercise 
peremptory challenges but does not require that trial judges allow the 
parties to ask questions for the intelligent exercise thereof. The majority 
reaches this conclusion although we have held that the loss of a peremptory 
challenge affects a substantial right.
 
A 
civil litigant in a law suit in which only property is at stake has a greater 
right to question potential jurors—and thus, a greater right to a fair and 
impartial jury—than a criminal defendant whose liberty or life is at stake. 
"I must not only register my dissent, but must exclaim, 'Color me not only 
amazed, but do it in chartreuse.'" 


 
        While 
the Court questioned the validity of Nunfio, 

 which 
 held that a litigant had a right to ask questions necessary to the intelligent 
 exercise of peremptory challenges, 

 the 
 Court did not overrule Nunfio until it issued Barajas v. State. 
 


        With 
that opinion, the Court appears to have created a catch-22 for both the State 
and the defense:
 
The 
question "can you be fair and impartial under a given set of facts?" 
can be repeated to include every fact in a given case. This "fair and 
impartial" question is a license to go fishing, without providing any 
concrete information for the intelligent use of peremptory or for-cause 
challenges. We have held that counsel may not conduct fishing expeditions during 
voir dire.
 
                . 
. . .
 
. 
. . We held that "a vague question about 'what things' the veniremember 
thought were important in determining whether an individual should receive a 
death sentence, wholly unrelated to the sentencing scheme, amounts to a fishing 
expedition going beyond the scope of proper voir dire." We concluded the 
question was improperly broad and the trial court did not abuse its discretion 
in disallowing it.
 
In 
Smith v. State, 703 S.W.2d 641, 645 (Tex. Crim. App. 1985), the trial 
court did not permit the defendant to ask venire members what "their 
thoughts" were on the insanity defense. We held this inquiry was so broad 
that it was a global fishing expedition. It did not "seek particular 
information from a particular panel member; rather, it present[ed] a general 
topic for discussion."
 
More 
recently and in another context, we elaborated on the need for counsel to ask 
specific questions. In Gonzales v. State, 3 S.W.3d 915, 917 (Tex. Crim. 
App. 1999), we addressed the issue of jurors withholding information during voir 
dire. We held that the defendant failed to show a juror had withheld information 
because defense counsel's questions had been inadequate. We said "defense 
counsel has an obligation to ask questions calculated to bring out that 
information which might be said to indicate a juror's inability to be impartial, 
truthful, and the like." We emphasized that "[c]ounsel must ask 
specific questions, not rely on broad ones," and that "counsel must 
ask follow-up questions."
 
The 
question in Nunfio and the question in this case are like the questions 
in Boyd, Smith, and Gonzales. These questions constitute 
global fishing expeditions, and trial courts are within their discretion to 
prevent the questions. 


 
        Global 
questions that do not go to a specific issue in a case, then, are not permitted. 
This pronouncement by the Court seems to indicate that the questions propounded 
must be based on the facts and issues in the case at bar. Yet the Court has also 
held that a litigant runs afoul of the prohibition against commitment questions 
if the hypothetical scenario upon which the question is based involves facts 
that will be elicited at trial. 

 A 
 general question is impermissible, and a specific question is impermissible 
 unless it leads only to a challenge for cause. It is difficult, then, to 
 understand what question would be permissible if it does not go to a challenge 
 for cause.
        In 
his concurrence to the majority opinion in Barajas, Judge Womack seems to 
suggest that no questions should be asked that go only to the exercise of 
peremptory challenges. This concurrence also suggests a basis for the Court’s 
dramatic shift in attitude toward questions aimed at seeking information for 
exercising peremptory strikes:
 
More 
important is the failure of the courts to consider the differences between the 
right to a qualified jury and the right to eliminate unfavorable jurors. 
"[A] defendant has no right that any particular individual serve on the 
jury. The defendant's only substantial right is that the jurors who do serve be 
qualified." The requirements of jurors' qualifications are in part 
constitutional and in part statutory. Article 35.16 presents an exclusive list 
of grounds for disqualification. Questioning about these grounds is essential to 
attaining a qualified jury.
 
The 
statutory provision of peremptory challenges provides a method of obtaining a 
more favorable jury, but it does not include a procedure of asking questions to 
implement the use of the challenges. There is no right to a favorable jury. That 
is why our law does not permit a party to get a prospective juror's commitment 
to decide an issue of fact or punishment. I would say that, similarly, there is 
no right to ask a juror about his views or sentiments on particular issues of 
fact or punishment. When the Houston & Texas Central and Barnes 
courts shifted from one right to another without considering their differences, 
they seemed to assume that they were equal, but they did not consider whether or 
why that should be so.
 
Another 
problem with the right to ask peremptory-challenge questions is that the 
doctrine has an inherent flaw that makes it impossible to implement. Such a 
doctrine cannot co-exist with the doctrine that it is improper to ask a jury to 
commit to render a particular decision on particular evidence. As the Court 
points out, ante at 39, the closer a question comes to violating the 
latter doctrine, the more valuable it is in intelligently exercising peremptory 
challenges. It is literally impossible to apply these doctrines in a rational 
and predictable way.
 
Since 
the doctrine was established, courts have adopted juror questionnaires that 
provide the parties with personal information about the members of the venire. . 
. . The questionnaires elicit information about a venire member's name, sex, 
race, age, residence and mailing addresses, education level, occupation, place 
of employment, marital status, and a spouse's employment information. The model 
form that was developed as the statute required also elicits information about 
telephone numbers and previous jury service. Thus the parties can obtain some 
information for the intelligent exercise of peremptory challenges without asking 
questions.
 
Given 
the inadequate jurisprudential basis for this doctrine, its irreconcilable 
conflict with another doctrine, the impossibility of its predictable 
application, the effect it has in unduly lengthening the process of jury 
selection, and the development of alternate sources of information, I would 
renounce it. From the jury questionnaires, the observation of the venire 
members, and the extensive questioning by counsel on causes for challenge that 
already characterizes our practice, the parties have a great deal of information 
to exercise their peremptory challenges intelligently. There is no need or 
justification for a right to ask other questions. I would hold that it is not 
error for a trial court to prevent counsel from asking questions that are 
irrelevant to a challenge for cause. 


 
        Presumably, 
the Barajas concurrence would hold that a litigant must rely on the 
written juror questionnaires without asking additional questions. Yet, in 1999, 
the Court of Criminal Appeals held that counsel who did rely on the 
questionnaires failed to show diligence in ferreting out disqualified jurors:
 
We 
granted Appellant's petition for discretionary review to examine his assertion 
that the Court of Appeals erred in failing to find juror misconduct where a 
juror made a false statement on her juror questionnaire on which Appellant 
relied, allegedly depriving him of the opportunity to intelligently exercise his 
peremptory challenges. This Court has never addressed the extent to which 
counsel may rely on information provided in written juror questionnaires.
 
We 
have consistently held, with respect to oral questions asked during voir dire, 
that error occurs where "a prejudiced or biased juror is selected without 
fault or lack of diligence on the part of defense counsel, such counsel 
acting in good faith on the juror's responses and having no knowledge of their 
inaccuracy." Thus, we have long insisted that counsel be diligent in 
eliciting pertinent information from prospective jurors during voir dire in an 
effort to uncover potential prejudice or bias:
 
defense 
counsel has an obligation to ask questions calculated to bring out that 
information which might be said to indicate a juror's inability to be impartial, 
truthful, and the like. Unless defense counsel asks such questions, we must 
hold, as we do here, that the purportedly material information which a juror 
fails to disclose is not really "withheld" so as to constitute 
misconduct which would warrant a reversal.
 
Counsel 
must ask specific questions, not rely on broad ones, to satisfy this obligation. 
And counsel must ask follow-up questions after uncovering potential bias. We 
have consistently held there is no error where counsel has not met that 
obligation.
 
We 
see no reason why counsel's burden to use diligence should be any less in the 
case of written juror questionnaires. Particularly because of the nature 
of written questions, counsel should be sure to ask follow-up oral 
questions concerning any information on the form that counsel deems material. 
While a questionnaire may serve as an efficient vehicle for collecting 
demographic data, it is not the most reliable way to collect other types of 
information. Counsel should never assume that the respondents will understand 
each question as it was intended by counsel to be understood. As this case 
illustrates, written questions are by nature vulnerable to 
misinterpretation—even questions that appear to be subject to only one 
interpretation. For this reason, "diligent counsel" will not rely on 
written questionnaires to supply any information that counsel deems material. 
Counsel who does otherwise is simply not diligent. 


 
        What 
is the rule now? Must the lawyer ask specific questions based on the issues in 
the case, or must he not? Must the lawyer rely on the jury information cards, or 
must he not? The conflicting mandates from the Court of Criminal Appeals make it 
very difficult for the bar, the trial judges, and the intermediate courts to 
grasp the rule, much less follow and enforce it. I would suggest that, apart 
from my own intellectual limitations, there is confusion at all levels about 
what constitutes a “commitment question.”
        A 
“commitment question” is a question through which an attorney attempts to 
bind or commit a prospective juror to a verdict based on a hypothetical set of 
facts. 

 It 
 would appear to me that a question delving into existing opinions, biases, 
 mind-sets, attitudes, values, and prejudices does not seek to bind or commit a 
 prospective juror. Rather, the question would appear to be wholly appropriate 
 in determining whether that veniremember is a person who will listen to the 
 witnesses before making up her mind, whether she will be unduly influenced by a 
 videotape because she believes televisions never lie, or whether she is 
 independent or wants only to be in agreement with the majority.
        For 
example, in the trial of a person with purple hair, the question, “Would you 
automatically believe a person with purple hair is immoral and a liar?” is not 
an attempt to commit the prospective juror to believing the defendant is immoral 
and a liar. It is an inquiry, just as the question, “Can you be fair to a 
person with purple hair if the victim has gray hair?” is an inquiry. There is 
no attempt to commit or bind the prospective juror to any verdict other than a 
fair one. And, although these questions do not in themselves establish a basis 
for a challenge for cause, questions intended to aid in determining peremptory 
challenges often lead to bases for challenges for cause. If the answer to the 
last question is “No. I think anyone with purple hair must be guilty unless 
you can prove he is not,” the veniremember may well have a bias against the 
defendant that would be a ground for a challenge for cause.
        Voir 
dire is tedious. But trial judges have tools within their discretion for 
controlling the length of voir dire. Lawyers must be allowed to try their cases, 
and trial judges must be trusted to control their trials. It is rare that a 
trial judge is reversed for abusing his or her discretion in allowing 
questioning during voir dire. The legislature has authorized the use of 
peremptory strikes. 

 They 
 are meaningless if we usurp from the trial judge and the lawyers the conduct of 
 the trial. By creating rules that essentially gut the lawyer’s ability to 
 seek information for determining the exercise of peremptory strikes, we make a 
 mockery of the legislature’s intent in creating the right to make peremptory 
 strikes. And, with all respect, the jury information cards are merely the 
 beginning of the inquiry. They provide little useful information for exercising 
 any kind of strike. The long information sheets provided in some courts are 
 more helpful, but still only the beginning of the inquiry.
        When 
we become more concerned with the speed of a trial or the level of boredom that 
we must endure as judges, lawyers, and veniremembers than we are with the 
fairness of the trial, we lose much more than we gain. No one has the right to a 
specific juror, but both the State and the defense, under the law as it is 
written, have the right to more than merely minimally-qualified jurors. They 
have the right to a pool of qualified jurors from which to make their peremptory 
strikes.
        In 
the case now before this court, the State asked, in various forms, “Do each of 
you feel as though you could evaluate a witness and his testimony and decide if 
he’s being truthful without automatically dismissing his testimony because of 
some criminal history?” This question probably was an attempt to commit the 
prospective jurors to consider impeachment evidence in a particular manner. The 
offending question, however, appears to be whether it would make a difference if 
the crime committed by the witness was against the defendant. This is the 
question that involves the peculiar facts of this case. It is difficult for me 
to determine what this question attempted to commit the prospective jurors to 
do. As phrased, the question may have been improper, not because it attempts to 
commit the veniremembers to a particular course of action, but because it 
violates the hoary rule against voir dire questions based on the specific facts 
of the case on trial. 

 While 
 the old rule included a prohibition against attempting to bind the jurors to a 
 particular course of action based on the facts of the case, the prohibition was 
 not limited to commitment questions but included any attempt to inquire into 
 the veniremembers’ attitude toward the facts of the case. Appellant, however, 
 did not object on this ground.
        The 
legislature has provided that the State, as well as the defense, is entitled to 
exercise peremptory strikes. 

 No 
 less than the defense, the State should be entitled to make necessary inquiries 
 to determine the attitudes of the veniremembers in order to use those strikes 
 intelligently. A mere inquiry into a veniremember’s thoughts and opinions is 
 not an attempt to commit that veniremember. While the State should not ask a 
 prospective juror to promise not to dismiss a witness’s testimony if that 
 witness has a criminal record, the State should be able to ask whether the 
 prospective juror believes that the fact of a criminal record might affect the 
 way he or she would view the testimony. Evidence of a prior conviction is 
 impeachment evidence. A juror is not disqualified for believing that evidence 
 of a witness’s prior conviction might affect the way the juror would view 
 that witness’s testimony. This question should be proper even if the State 
 does not follow the question with other questions leading to a challenge for 
 cause.
        While 
we hold that possible answers to these questions would lead to a challenge for 
cause based on a juror’s bias, 

 other 
 possible answers would not. Yet under Barajas, because the question does 
 not necessarily call for an answer that would make the juror subject to 
 a challenge for cause, we should hold the question to be improper. 
 

 Holding 
 the question improper, however, deprives the State of any real vehicle for 
 learning how the prospective jurors view their obligation to determine the 
 credibility of witnesses with criminal records.
        Surely, 
so long as the legislature permits peremptory strikes, litigants must be able to 
ask the questions that will allow them to exercise this right intelligently. So 
long as the defense is allowed peremptory strikes, counsel can only render 
effective assistance in voir dire if he can pose reasonable questions to explore 
areas that would lead to a peremptory strike. So long as the State is allowed 
peremptory strikes, the State must be allowed to pose reasonable questions to 
explore areas that would lead to a peremptory strike. For this court to say, 
“We know the legislature has provided you the right to exercise peremptory 
strikes, but we will not allow you to ask questions to exercise that right 
intelligently,” is to make a mockery of the statute and to set ourselves up as 
a super legislature.
        As 
a justice on an intermediate court of appeals, I am mindful of our duty to 
follow precedent established by our higher courts. Respectfully, however, I 
would ask the Court of Criminal Appeals to reconsider its holding in Barajas 
to the extent that it does not allow questions for the purpose of peremptory 
challenges, and to reconsider and clarify its definition of a “commitment 
question.”
 
 
                                                                  LEE 
ANN DAUPHINOT
                                                                  JUSTICE
 
 
PUBLISH
 
DELIVERED: 
September 11, 2003