

# NUMBER 13-11-00084-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**JUAN HERRERA,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

---

### On appeal from the 148th District Court
### of Nueces County, Texas.

---

## MEMORANDUM OPINION

**Before Justices Benavides, Vela, and Perkes
Memorandum Opinion by Justice Rose Vela**

Appellant, Juan Herrera, and co-defendants, Anthony Hernandez, Alfredo Garza, and Israel Robali, were tried together in a single trial. The jury convicted appellant of murder, a first-degree felony, *see* TEX. PENAL CODE ANN. § 19.02(b), (c) (West 2011), and

aggravated assault with a deadly weapon, a second-degree felony. *See id.* §
22.02(a)(2), (b). The jury assessed concurrent sentences of twenty-five years' and five
years' imprisonment, respectively. In nine issues, appellant argues the trial court erred
by: (1) denying him general voir dire; (2) excluding impeachment evidence; (3) admitting
evidence of gang problems; (4) failing to submit a separate charge for each defendant; (5)
accepting a fatally defective jury verdict; (6) allowing the State to reopen the case; (7)
denying his request to ask the medical examiner a question; (8) allowing the alternate
jurors to sit in with the jury during deliberations; and (9) denying his motion for new trial.
We affirm.

## I. BACKGROUND

In the evening of July 31, 2009, Brian Villarreal and his friends, Joel Pacheco,
Isabel Martinez, and John Sardie went to Burlington Coat Factory in Corpus Christi.
While inside the store, Pacheco had a minor confrontation with Anthony Hernandez.
Afterwards, Villarreal and his friends went outside and saw appellant drive up with two
passengers, Israel Robali and Alfredo Garza. Garza asked Villarreal and his friends if
they "had a problem." Villarreal testified that when Martinez approached their car,
appellant drove away and took a pipe out of the trunk. Appellant, Robali, and Garza
walked toward Villarreal and his friends while Hernandez and a juvenile approached the
four from behind. When Robali hit Pacheco in the head, everybody started fighting.
During the fight, Villarreal heard appellant say, "Fuck these fools, blast them already, fuck
them." Robali pulled a gun from his pocket and shot Martinez. When Martinez tried to
grab the gun, Robali shot him again. Undaunted, Martinez "threw" Robali over his

2

shoulder. When Robali hit the ground, the gun, which Robali held, went off, striking Martinez. Villarreal kicked the gun out of Robali's hand and started choking him, but stopped when he realized Martinez was dying.

John Sardie testified he was fighting someone and "heard a shot and then I heard a second one and it shot me in the arm." He could not identify the person who shot him; however, when the prosecutor asked him if the person who shot him "was one of those three guys in the car [driven by appellant]?," he said, "Yes." After getting shot, Sardie saw appellant pick up a gun that was on the ground. When appellant pointed the gun at Sardie, Sardie hid behind a truck. He testified that "I saw him [appellant] shooting the gun after I ran behind the truck and I looked back." He stated he "saw Herrera [appellant]" grab Martinez "from the back of his head and like pop, like leaned him over like that, on the side and just shot him three times."

Shortly before the fight started, Daniel Pulido was in his truck, which was parked near the Burlington Coat Factory. He saw four men come out of the store and stand against a wall at the entrance to the store. About five minutes later, appellant drove up in a blue car and stopped near the four men. After a passenger in the blue car made "signs with his hands," the men approached the car, which drove forward. Appellant and a passenger got out, and appellant retrieved what appeared to be a silver-colored gun from the trunk. Appellant and his passengers started fighting with the four men, who were standing against the wall. Pulido testified he saw "Juan Herrera and [Israel] Robali fighting about two guys." After Pulido lost sight of the fight, he "heard about three or four rounds go off."

3

Officer Jason Rhodes heard a dispatch about the fight at Burlington Coat Factory and stopped the suspect vehicle, which had five occupants—Alfredo Garza, Anthony Hernandez, Israel Robali, O.H.,[1] and appellant, the driver of the vehicle. When Officer Rhodes searched the vehicle, he found a small handgun underneath the backseat and a pipe and a bat in the trunk.

Ray Fernandez, M.D., the Nueces County Medical Examiner who performed Martinez's autopsy, testified Martinez's cause of death was multiple gunshot wounds. Specifically, Martinez had a fatal gunshot wound that went through his aorta. He also had gunshot wounds at the left back and on the left upper arm.

Forensic evidence showed that because the bullets removed from Martinez's body had "insufficient detail," they could not be compared to test bullets fired from the .22 caliber pistol recovered from the car driven by appellant. However, the bullets were consistent with being .22 caliber bullets. All of the casings recovered from the crime scene came from the .22 caliber pistol.

## II. DISCUSSION

### A. General Voir Dire

In issue one, appellant contends the trial court erred by denying him a general voir dire with questions that were critical to the issues.

#### 1. Background

Appellant and his co-defendants were represented by a different attorney. On May 10, 2010, the trial court conducted general voir dire examination of the veniremembers. At the end of general voir dire, the trial court addressed the attorneys

---

[1] Because this individual is a juvenile, we will not mention the first or last name.

4

for the State and the defendants as follows:

> Gentlemen, I have reviewed my general notes that a Judge relies upon in conducting voir dire. I have reviewed your notes. I may not have addressed every single word and matter in your notes, but I have addressed your notes. I now ask you if you have anything that you would like me to further address.

When the prosecutor stated, "[W]e have a quick general voir dire about a few things[,]" the trial court stated, "No, you're not going to do general voir dire. The next phase is individual examination of the panel members. Today we'll conclude with the general voir dire. Anything else that I should add to general voir dire?" When the trial court asked appellant's defense counsel, "[A]nything additional?," he said, "Not at this time, Judge." Afterwards, the trial court stated, "Ladies and gentlemen, that concludes general voir dire." Appellant's defense counsel did not object and did not advise the court he had any questions or information that the trial court needed to address during general voir dire.

When individual voir dire began on May 12, 2010, the trial court announced to the attorneys for the State and the defendants the following:

> We had agreed that the Court would conduct voir dire. The Court asked and received notes from counsel on questions and topics to ask during that general voir dire. I made it clear to all counsel that general voir dire concluded at the end of that session on Monday May 10th, 2010, . . . .
>
> *   *   *
>
> I am now told that counsel want to continue with general voir dire. The door to general voir dire is closed. We're done. Today we pick up with individual voir dire.

5

When appellant's defense counsel announced ready "subject to our request to the Court to perform some additional voir dire in the general nature," the trial court replied, "General voir dire has concluded . . . ."

## 2. Standard of Review

"The trial court has broad discretion over the process of selecting a jury." *Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002) (citing *Allridge v. State*, 762 S.W.2d 146, 167 (Tex. Crim. App. 1988)); *Boyd v. State*, 811 S.W.2d 105, 115 (Tex. Crim. App. 1991); *see Barnard v. State*, 730 S.W.2d 703, 715 (Tex. Crim. App. 1987) (stating "the . . . [trial] court has discretion to control the manner of voir dire with the exception that in capital murder cases both the State and the defense must be accorded the right to examine each prospective juror individually"). "A trial court's discretion is abused only when a proper question about a proper area of inquiry is prohibited." *Barajas*, 93 S.W.3d at 38; *Dinkins v. State*, 894 S.W.2d 330, 345 (Tex. Crim. App. 1995). "A question is proper if it seeks to discover a juror's views on an issue applicable to the case." *Barajas*, 93 S.W.3d at 38 (citing *Smith v. State*, 703 S.W.2d 641, 643 (Tex. Crim. App. 1985)). "An otherwise proper question is impermissible, however, if it attempts to commit the juror to a particular verdict based on particular facts." *Id.* (citing *Standefer v. State*, 59 S.W.3d 177, 181 (Tex. Crim. App. 2001)). "In addition, a voir dire question that is so vague or broad in nature as to constitute a global fishing expedition is not proper and may be prevented by the trial judge." *Id.* at 39 (citing *Smith*, 703 S.W.2d at 645). A trial court may also limit voir dire when a question is repetitious. *Dinkins*, 894 S.W.2d at 345.

6

### 3. Analysis

Upon agreement from the attorneys, and after taking into consideration their "notes", the trial court conducted general voir dire. Toward the end of general voir dire examination, when the trial court asked the attorneys for the State and the defendants if they had "anything that [they] would like [the trial court] to further address[,]" appellant's defense counsel stated, "Not at this time, Judge." When the trial court told the veniremembers, "Ladies and gentlemen, that concludes general voir dire[,]" appellant's defense counsel did not object to the trial court's decision to end general voir dire, and he did not advise the court he still had questions for the court to ask on general voir dire. The trial court did not prohibit appellant's defense counsel from asking a proper question about a proper area of inquiry before the conclusion of general voir dire. Therefore, we hold the trial judge did not abuse her discretion when she decided to end general voir dire examination. *See Barajas*, 93 S.W.3d at 38; *Dinkins*, 894 S.W.2d at 345. Issue one is overruled.

### B. Exclusion of Impeachment Evidence

In issue two, appellant contends the trial court erred by excluding impeachment evidence consisting of a photograph of John Sardie aiming a handgun. Specifically, appellant argues that by "excluding proper impeachment evidence," the trial court denied him (1) the right to present a defense i.e., that he was not the aggressor in the fight, and (2) the right to confront adverse witnesses against him.

7

### 1. Standard of Review

"An appellate court reviews a trial court's decision to admit or exclude evidence under an abuse of discretion standard." *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006) (citing *Rachal v. State*, 917 S.W.2d 799, 816 (Tex. Crim. App. 1996)). "The trial court abuses its discretion when the decision lies outside the zone of reasonable disagreement." *McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008). "[I]f the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed even if the trial judge gave the wrong reason for his [or her] right ruling." *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

### 2. Background

The evidence did not show that Sardie used any weapon during the fight with appellant and his alleged accomplices. However, during Sardie's cross-examination, appellant's defense counsel asked him, "Have you held a gun in your hand and pointed it at somebody, Mr. Sardie?" To this, he replied, "Never." Afterwards, appellant's defense counsel showed Sardie defendant's exhibit twenty one, which Sardie identified as a photograph of himself, holding his sister's gun. He testified his sister took the photo and that he "wasn't pointing at her." He testified he "was just pos[ing] for a photo[.]" When appellant's defense counsel offered defendant's exhibit twenty one into evidence[2] for impeachment purposes, the prosecutor objected on the basis of "relevancy," and the trial court sustained the objection.

---

[2] This photograph was admitted as part of a bill of exceptions. It is listed as defendant's exhibit twenty-one and is included in volume fifteen of the reporter's record.

## 3. Analysis

We note that defense counsel's question—"Have you held a gun in your hand and pointed it at somebody"—is potentially misleading because holding a gun in one's hand is a prerequisite to pointing it at a person, but Sardie could have held the gun without intending to point it at anyone, including the person who took the photo. With respect to defendant's exhibit twenty-one, Sardie testified he was posing for a photo and was not pointing the weapon at his sister, who took the photo. Therefore, Sardie's negative response to the question—"Have you held a gun in your hand and pointed it at somebody"—was not untruthful.

Generally, the Sixth Amendment[3] right to present evidence and to cross-examine witnesses does not conflict with the corresponding rights under state evidentiary rules. *Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009). Thus, we can resolve most questions regarding cross-examination by looking to the Texas Rules of Evidence. *Id.* "In those rare situations in which the applicable rule of evidence conflicts with a federal constitutional right, rule 101(c) [of the Texas Rules of Evidence] requires that the Constitution of the United States controls over the evidentiary rule." *Id.* In *Hammer*, however, the court of criminal appeals stated, "The Confrontation Clause mandate of *Davis v. Alaska*[4] is not inconsistent with Texas evidentiary law. Thus, compliance with

---

[3] The Confrontation Clause of the Sixth Amendment guarantees that, "[i]n all criminal prosecutions the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI.

[4] *See Davis v. Alaska*, 415 U.S. 308 (1974). In *Hammer v. State*, the court of criminal appeals stated the Sixth Amendment right to confront witnesses includes the right to cross-examine them to attack their general credibility or to show their possible bias, self-interest, or motive in testifying. 296 S.W.3d 555, 561 (Tex. Crim. App. 2009) (citing *Davis*, 415 U.S. at 316). "This right is not unqualified, however, the trial judge has wide discretion in limiting the scope and extent of cross-examination." *Id.*

a rule of evidence will, in most instances, avoid a constitutional question concerning the admissibility of such evidence."   *Id.* at 566.

Here, in an attempt to impeach Sardie's credibility and refute his claim that he never held a gun and pointed it at somebody, appellant's defense counsel offered a photo of Sardie holding and aiming his sister's handgun.   Texas Rule of Evidence 607 states that "the credibility of a witness may be attacked by any party . . . ."   TEX. R. EVID. 607. And, "[u]nder Rule 404(a)(3) of the Texas Rules of Evidence, a defendant may always offer evidence of a pertinent character trait—such as truthfulness—of any witness.   But, under rule 608, the witness's general character for truthfulness may be shown only through reputation or opinion testimony."   *Hammer*, 296 S.W.3d at 563.   Our state evidentiary rules permit a party to cross-examine a witness "on specific instances of conduct when they are used to establish his specific bias, self-interest, or motive for testifying."   *Id.*

Rule 608(b) provides in part:   "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence."   TEX. R. EVID. 608(b).   Accordingly, whether the photo in this case was admissible is at least subject to reasonable disagreement. We hold the trial court did not abuse its discretion by excluding the photo from evidence. Issue two is overruled.

## C. Admission of Evidence Concerning Gang Problems

In issue three, appellant contends the trial court erred by admitting evidence of the current gang problems in Corpus Christi, Texas because the evidence was irrelevant to the issues in the case, and there is no evidence the incident was gang related.

### 1. Background

During the State's guilt-innocence case-in-chief, Detective Crispin Mendez, a former gang investigator for the Corpus Christi Police Department's Gang Unit, testified Corpus Christi has a criminal street gang known either as "Cuarenta" or "Cuare." When the prosecutor asked him, "Do we have any problems with gangs here in Corpus Christi?," he said, "Yes." At that point, appellant's defense counsel stated, "Object to the relevance, Your Honor." The trial court overruled the objection, and appellant's defense counsel did not ask for a running objection. Next, the prosecutor asked Detective Mendez, "What are some of the problems we have with these gangs in Corpus?" Without objection, he stated, "Some of the problems we have are . . . robberies, burglaries, thefts, drug dealing, aggravated assaults, homicides, home invasions."

### 2. Preservation of Error

"As a prerequisite to presenting a complaint on appeal, a party must have made a timely and specific request, objection, or motion to the trial court." *Grant v. State*, 345 S.W.3d 509, 512 (Tex. App.—Waco 2011, pet. ref'd) (citing TEX. R. APP. P. 33.1(a)(1)(A)). "An objection is timely if it is made as soon as the ground for the objection becomes apparent, i.e., as soon as the defense knows or should know that an error has occurred." *Id.* (citing *Neal v. State*, 256 S.W.3d 264, 279 (Tex. Crim. App. 2008)). "If a party fails to

11

object until after an objectionable question has been asked and answered, and he can show no legitimate reason to justify the delay, his objection is untimely and error is waived." *Id.* (citing *Dinkins*, 894 S.W.2d at 355).

In the instant case, appellant's defense counsel did not object to the question posed to Detective Mendez until *after* the objectionable question had been asked and answered. Appellant has shown no reason, legitimate or otherwise, to justify the delay. Thus, the objection is untimely, and error is waived. *See id.*

In addition, "[i]t is also necessary that the objecting party must continue to object each time the objectionable question or evidence is offered, obtain a running objection, or request a hearing outside the jury's presence in order to preserve a complaint for appellate review." *Id.*; *see Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003); *Fuentes v. State*, 991 S.W.2d 267, 273 (Tex. Crim. App. 1999). Here, appellant's defense counsel did not object to the second question posed to Detective Mendez, and he did not obtain a running objection or request a hearing outside the jury's presence. Thus, error, if any, is not preserved for appellate review. *See Grant*, 345 S.W.3d at 512; *Martinez,* 98 S.W.3d at 193; *Fuentes*, 991 S.W.2d at 273. We hold the trial court did not abuse its discretion by admitting the testimony. Issue three is overruled.

## D. Failure to Separate the Charge For Each of the Four Co-Defendants

In issue four, appellant contends the trial court erred by denying his request to submit separate charges to the jury for himself and his three co-defendants. Herrera and his three co-defendants were tried together in a single trial. At the conclusion of the guilt-innocence phase, and over objection from appellant's defense counsel, the trial

12

court submitted a single charge to the jury.

**1. Preservation of Error**

Texas Rule of Appellate Procedure 38.1(i) states the appellate "brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). Appellant's brief contains no citation to any authority that might support an argument that when multiple defendants are tried together in a single trial, each defendant is entitled to a separate jury charge. Therefore, we hold this issue is inadequately briefed and presents nothing for review as this Court is under no obligation to make appellant's arguments for him. *Lucio v. State*, 351 S.W.3d 878, 896 (Tex. Crim. App. 2011); *see* TEX. R. APP. P. 38.1(i); *Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008) (affirming that court of criminal appeals has no obligation "to construct and compose" a party's "issues, facts, and arguments with appropriate citations to authorities and to the record") (internal quotes omitted)); *Cardenas v. State*, 30 S.W.3d 384, 393–94 (Tex. Crim. App. 2000) (deciding in a capital case that the defendant's points complaining of the lack of a jury instruction on the voluntariness of the defendant's statements to the police, were inadequately briefed "by neglecting to present argument and authorities" in support of them). Even assuming appellant had not waived this complaint, we conclude he has suffered no harm.

**2. Standard of Review for Charge Error**

"[A]n appellate court's first duty in evaluating a jury charge issue is to determine whether error exists. Then, if error is found, the appellate court should analyze that error for harm." *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003). If, as in

13

this case, an error is preserved with a timely objection, then the jury-charge error requires reversal if the appellant suffered "some harm" as a result of the error. *Sanchez v. State*, No. PD-0961-07, 2012 WL 1694606, at *6 (Tex. Crim. App. May 16, 2012); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). "The harm caused by the error must be considered 'in light of the entire jury charge, the state of the evidence, including the contested issues and the weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole.'" *Sanchez*, 2012 WL 1694606, at *6 (quoting *Almanza*, 686 S.W.2d at 171); *see* TEX. CODE CRIM. PROC. ANN. art. 36.19 (West 2006).

In the instant case, appellant argues that "[b]ecause there was some contradictory evidence at trial that [he] shot the gun, it was harmful for [him] not to have his own charge submitted to the jury, separate and apart from the other co-defendants." He claims that "[a] separate charge for each defendant would have created more of a sense of separation of the evidence from each of the different defendants in the case, so that each defendant's conviction could stand on its own." In addition to the fact that appellant cites no authority for this argument, "[a]n appellate court may assume that the jury will follow the instruction as given, and will not reverse a conviction in the absence of evidence that the jury was actually confused by the charge." *Cagle v. State*, 23 S.W.3d 590, 594 (Tex. App.—Fort Worth 2000, pet. ref'd); *see Williams v. State*, 937 S.W.2d 479, 490 (Tex. Crim. App. 1996). In the instant case, there is no evidence that the jury was confused by the submission of a single charge for all four defendants. Thus, appellant's argument falls into the category of theoretical harm. To obtain reversal for jury-charge error, an

14

"[a]ppellant must have suffered actual harm, not merely theoretical harm." *Sanchez*, 2012 WL 1694606, at *6; *see Arline v. State*, 721 S.W.2d 348, 352 (Tex. Crim. App. 1986). Issue four is overruled.

## E. Acceptance of a Fatally Defective Jury Verdict

In issue five, appellant contends the trial court erred by accepting a fatally defective jury verdict, which was inconsistent with the application of the law of parties in the charge.

### 1. Applicable Law of Parties

Section 7.01(a) of the Texas Penal Code provides: "A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." TEX. PENAL CODE ANN. § 7.01(a) (West 2011). Section 7.02(a) provides, in relevant part, that a "person is criminally responsible for an offense committed by the conduct of another if: . . . (2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense . . . ." *Id.* § 7.02(a)(2).

### 2. Analysis

Appellant argues that under the law of parties, the jury found two of the co-defendants, himself and Robali, guilty of murder, and it found the other two co-defendants, Hernandez and Garza, guilty of the lesser-included offense of criminally negligent homicide. *See Jackson v. State*, 248 S.W.3d 369, 371 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (stating criminally negligent homicide is a lesser-included

15

offense of murder). Appellant argues the verdict is inconsistent with the theory under the law of parties because by finding Hernandez and Garza guilty of the lesser-included offense, by definition, they acted with a lower culpable mental state than required for murder. If the jury found the defendants guilty under the theory of the law of parties, they would have all been required to all have the same culpable mental state, to aid, encourage, solicit or attempt to aid in the commission of the offense. Appellant argues that "[b]y finding different culpable mental states of mind for each of the defendants, the application of the law of parties is violated as to how they aided and encouraged in a different crime."

Appellant's brief contains no citation to any authority that might support this argument. Therefore, we hold this issue is inadequately briefed and presents nothing for review as this Court is under no obligation to make appellant's arguments for him. *Lucio*, 351 S.W.3d at 396; *see* TEX. R. APP. P. 38.1(i); *Busby*, 253 S.W.3d at 673; *Cardenas*, 30 S.W.3d at 393–94. Nevertheless, "[i]t is well-established that one accomplice may be found guilty of a different, more serious offense than other accomplices." *Ex parte Thompson*, 179 S.W.3d 549, 553 (Tex. Crim. App. 2005). "What matters under Section 7.02(a) is the criminal *mens rea* of each accomplice; each may be convicted only of those crimes for which he had the requisite mental state." *Id.* at 554 (emphasis in original). The *Thompson* court stated:

> To determine the kind of homicide of which the accomplice is guilty, it is necessary to look to his state of mind; it may have been different from the state of mind of the principal and they thus may be guilty of different offenses. Thus, because first degree murder requires a deliberate and premeditated killing, an accomplice is not guilty of this degree of murder unless he acted with premeditation and deliberation. And, because a

16

killing in a heat of passion is manslaughter and not murder, an accomplice who aids while in such a state is guilty only of manslaughter even though the killer is himself guilty of murder.   Likewise, it is equally possible that the killer is guilty only of manslaughter because of his heat of passion but that the accomplice, aiding in a state of cool blood, is guilty of murder.

*Id.* at 554–55 (quoting 2 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 13.2(c) at 346–47 (2d ed. 2003).   Issue five is overruled.

## F. Admission of Rebuttal Testimony

In issue six, appellant contends the trial court erred by allowing the State to reopen its case and admit improper rebuttal testimony.

### 1. Background

During the punishment phase, Officer Jeremy Loftin testified on direct-examination that on February 14, 2009, he was dispatched to 803 Duncan Street in Corpus Christi in reference to drug activity.   While at the residence, police detained Israel Robali and two other individuals who are not co-defendants in the instant case.   According to Officer Adrian Dominguez, a search of the residence turned up 131.63 grams of crack cocaine and 17.20 grams of heroin.

After appellant and his co-defendants finished presenting their evidence at the punishment phase, the prosecutor told the trial court he wanted to call Officer Bill Livingston as a rebuttal witness.   However, when Officer Livingston's name was called, he did not appear in the courtroom.   Thereafter, the prosecutor and the defense attorneys rested and closed.   The next day, but prior to closing arguments, the trial court announced the State had asked to reopen the case on the issue of punishment.   With regard to the basis for reopening the case, the prosecutor stated that one of the fathers

17

and some of the witnesses testified "they are good boys, they never get in the [sic] trouble with the law. There has been evidence already that he [Israel Robali] was at a residence, one of the guys was at a residence where there was a large amount of narcotics found when he was present there. . . ." He further stated that Officer Livingston is "going to testify that the amount of narcotics here are not for personal use. These are the amounts that are used by people that supply the street level dealers. . . ."

In response, appellant's defense counsel objected that Officer Livingston's testimony was not proper rebuttal testimony, but additional evidence on the issue of co-defendant Robali's involvement. After the trial court overruled the objection, Officer Livingston, a detective in the Vice and Narcotics Division of the Corpus Christi Police Department, testified that during 2009, the price of cocaine ranged from $50 to $100 per gram and that heroin sold for $70 to $100 per gram. When the prosecutor asked him, "Would you consider somebody having 130 grams of cocaine for personal use?", he said, "No. It would be indicative of someone who is trafficking or distributing narcotics." He said that person "would be a mid-level dealer the ones who are supplying the street level dealers."

### 2. Applicable Law & Analysis

"[W]e review a trial court's decision on a motion to reopen for an abuse of discretion." *Smith v. State*, 290 S.W.3d 368, 373 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). Article 36.02 of the Texas Code of Criminal Procedure governs a party's right to reopen a case. It states: "The court shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appears that it is necessary to a

18

due administration of justice." TEX. CODE CRIM. PROC. ANN. art. 36.02 (West 2007). In *Peek v. State*, the court of criminal appeals stated that "[a] trial judge is required to reopen a case under Art. 36.02 only if the proffered evidence is 'necessary to a due administration of justice'" and "conclude[d] that a 'due administration of justice' means a judge should reopen a case if the evidence would materially change the case in the proponent's favor." 106 S.W.3d 72, 79 (Tex. Crim. App. 2003). In addition, the *Peek* court stated, "'Due administration of justice' requires a showing that the evidence is more than just relevant—it must actually make a difference in the case." *Id*. A party can reopen his case to admit additional evidence even if the evidence is not rebuttal evidence. *Id*. at 78.

We are unable to conclude that Officer Livingston's testimony would not have materially changed the case in the State's favor with regard to Robali's punishment. The State sought to reopen the case in order to admit testimony, showing the amount of narcotics was not for personal use; rather, it indicated the person possessing the contraband was involved in trafficking or distributing narcotics. Thus, the testimony would materially change the case in the proponent's favor with regard to Robali's punishment because it showed he was not using the narcotics. Instead, he was involved in the distribution of narcotics. We hold the trial court did not abuse its discretion by granting the motion to reopen the case. Issue six is overruled.

## G. Exclusion of Evidence

In issue seven, appellant contends the trial court erred by preventing his defense counsel from asking Dr. Ray Fernandez a relevant and legal question.

19

## 1. Background

Dr. Fernandez, the medical examiner who performed Martinez's autopsy, testified the toxicology report showed the amount of marihuana in the victim's system indicated he had used the drug within at least two hours of his death. However, he stated the marihuana in Martinez's system did not contribute to his death.

On cross-examination, appellant's defense counsel asked Dr. Fernandez, "Of those persons you perform postmortem examination who died of violent deaths, do a very high percentage of them have narcotics in their system?" At that point, the prosecutor said, "What's the relevancy with other people, Your Honor?" Appellant's defense counsel stated the relevancy of the question is that "Dr. Fernandez is their expert, Your Honor. I think he—"At that point, the trial judge stated, "Relevancy of your question, [defense counsel]? And if that's your response, I'm ready to answer." Appellant's defense counsel replied, "That's my response, Your Honor." The trial court sustained the objection, and appellant's defense counsel passed the witness.

## 2. Applicable Law & Analysis

To preserve a ruling excluding evidence for appellate review, the record must contain an offer of proof. *See* TEX. R. EVID. 103; *Fairow v. State*, 943 S.W.2d 895, 905 (Tex. Crim. App. 1997); *Hambrick v. State*, 11 S.W.3d 241, 243 (Tex. App.—Texarkana 1999, no pet.). Appellant's defense counsel failed to make either a formal bill of exceptions or request permission to make an informal offer of proof (i.e., either in question-and-answer form or in the form of a concise statement by counsel). Without an offer of proof, we do not know what testimony the trial court excluded when it limited

20

cross-examination.

Nevertheless, based upon the record, defense counsel's question to Dr. Fernandez would, in all probability, not have elicited any relevant testimony. Texas Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. "Furthermore, except as otherwise provided by statute or rule, a jury is entitled to have before it 'all possible relevant information about the individual defendant whose fate it must determine.'" *Shuffield*, 189 S.W.3d at 793 (quoting *Sells v. State*, 121 S.W.3d 748, 766 (Tex. Crim. App. 2003)). "Even when the evidence is relevant, the trial court may be within its discretion to exclude it pursuant [to] Texas Rule of Evidence 403." *Id.* "Under Rule 403, relevant evidence may be excluded if 'its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or negligent presentation of cumulative evidence.'" *Id.*

The percentage of people who die from violent deaths while having narcotics in their bodies does not, by itself, make appellant more or less culpable for Martinez's murder. Nor does it, by itself, make a jury's finding of mitigation any more or less probable than it would be without the evidence. Looking at the entirety of the record, we are unable to say the trial court abused its discretion by excluding the complained-of testimony. Issue seven is overruled.

21

**H. Alternate Jurors**

In issue eight, appellant contends the trial court erred by allowing the alternate jurors to sit in with the jury during deliberations on guilt-innocence, in violation of article 36.22 of the Texas Code of Criminal Procedure.   This article provides:   "No person shall be permitted to be with a jury while it is deliberating.   No person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court."   TEX. CODE CRIM. PROC. ANN. art. 36.22 (West 2006).

**1. Background**

After the jury returned its guilty verdicts, but before the jury heard any punishment evidence, Robali's defense counsel moved for a mistrial, stating:

> Judge, procedurally on the issues of jury conduct, I am moving for a mistrial based on the Court has two alternates that have been part of the proceedings.   Prior to receiving the verdict, the two alternates were allowed to go into the jury pool room which is designated for the twelve jurors, and under 36.22, its contact with jurors, there are still—

> \* \* \*

> Our problem here is, is that these jurors, the two alternates, have not had a role in the deliberation issues, but they are still been standing by in case something happened to the twelve jurors.   Where violations occurred is where the juror before receiving the verdict had all come together again for thirty minutes or so, stayed in the jury room while waiting security to be secured for the receiving of the verdict.

> I think that's a contamination because we're still in the process of continuing this jury for punishment issues, and as a result of that, we don't know what conversed in there.   We're going to have to develop that later, but I think that's sufficient ground of violation of 36.22.

The trial court overruled the request for a mistrial.   Appellant concedes that none of the jurors, including the alternate jurors, were questioned about any specific misconduct.

22

## 2. Preservation of Error

In order to preserve error for appellate review, "a party's point of error on appeal must comport with the objection made at trial.'" *Grant,* 345 S.W.3d at 512 (quoting *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002)); *see also Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995) (point of error raised on appeal must correspond to objection made at trial).   In the instant case, defense counsel moved for a mistrial regarding "the issues of jury conduct."   However, appellant's point of error on appeal does not refer to the request for a mistrial.   Therefore, the issue is not preserved for appellate review.   Even assuming error had been preserved, we conclude the trial court did not err by denying the mistrial.

## 3. Mistrial

"A violation of article 36.22, once proven by the defendant, triggers a rebuttable presumption of injury to the accused, and a mistrial may be warranted."   *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009).   "A mistrial is an appropriate remedy in 'extreme circumstances' for a narrow class of highly prejudicial and incurable errors."   *Id.* "A mistrial halts trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile."   *Id.*   "Whether an error requires a mistrial must be determined by the particular facts of the case."

"A trial court's denial of a mistrial is reviewed for an abuse of discretion."   *Id.*   "An appellate court views the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling."   *Id.*   "The ruling must be upheld if it was within the zone of reasonable disagreement."   *Id.*

23

**4. Analysis**

The record contains no evidence showing that (1) an alternate juror was with the jury while it was deliberating, or (2) that an alternate juror conversed with any of the twelve jurors about the case on trial. *See* TEX. CODE CRIM. PROC. ANN. art. 36.22. Thus, appellant has not proven a violation of article 36.22. Therefore, we hold the trial court did not abuse its discretion by denying a mistrial. Issue eight is overruled.

**I. Motion for New Trial**

In issue nine, appellant contends the trial court erred by denying his motion for new trial because his defense counsel was ineffective for failing to call two material witnesses, Michael Estrada and Brianna Garza.

**1. The New-Trial Hearing**

Michael Estrada testified that on the date in question, he and his front-seat passenger, Brianna Garza, turned into the Burlington Coat Factory parking lot and saw two men jump over the hood of their car. Both men started fighting with some other men. During the fight, the man who was fighting with Israel Robali pulled "something" out of his pocket and went towards Robali, who was trying to get into a car that had pulled up. The man "attacked" Robali, who pushed him away. When Estrada "heard something pop," he looked back towards the fight and "saw that guy going towards" Robali. When the prosecutor asked Estrada, "Did Israel shoot before or after that car got there?", he said, "After." However, when Estrada was asked if he had seen "the shooting itself?", he said, "Not really."

24

Brianna Garza saw the men fighting and testified Robali "was getting beaten up." Then, Robali pulled a gun from his pants. She testified that when "[t]he taller guy swung at Robali, . . . he [Robali] shot him." When the taller man "swung again, . . . that's when the gun went off more than once." She did not see Robali trying to get into a vehicle.

Appellant's defense counsel testified that because Estrada and Garza tended to contradict each other, he decided not to call them as witnesses. He stated that Garza "had a lot of different things from what she claimed that she was able to see that just didn't fit into what we understood about the case. We just didn't consider her a very good witness from the standpoint of either credibility of what she was able to see." He also testified, "We had . . . additional witnesses . . . including . . . Michael Estrada, . . . . But after interviewing each of those groups of people they ended up having enough negative stuff in their testimony where the balance after we considered both sides of it just did not weigh in favor of calling them as witnesses." Later during the new-trial hearing, appellant's defense counsel testified that Garza's "testimony doesn't help at all . . . because she certainly could have been testifying about things that she saw after Israel [Robali] picked up the gun off the ground. So we didn't consider her testimony valuable in assistance to [appellant] at all."

**2. Applicable Law**

**a. New Trial**

"[T]he trial court does not have discretion to grant a new trial unless the defendant shows that he is entitled to one under the law." *State v. Herndon*, 215 S.W.3d 901, 907 (Tex. Crim. App. 2007). "To grant a new trial for a non-legal or legally invalid reason is

an abuse of discretion." *Id.* As the court of criminal appeals has explained, the test for abuse of discretion

> "is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action; rather, it is a question of whether the trial court acted without reference to any guiding rules or principles, and the mere fact that a trial court may decide a matter within its discretionary authority differently than an appellate court does not demonstrate such an abuse."

*Id.* (quoting *Howell v. State*, 175 S.W.3d 786, 792 (Tex. Crim. App. 2005) (quoting *Brown v. State*, 870 S.W.2d 53, 55 (Tex. Crim. App. 1994)).

"While a trial court has wide discretion in ruling on a motion for new trial which sets out a valid legal claim, it should exercise that discretion by balancing a defendant's 'interest of justice' claim against both the interests of the public in finality and the harmless-error standards set out in rule 44.2." *Id.* "Trial courts should not grant a new trial if the defendant's substantial rights were not affected." *Id.* "Otherwise, the phrase 'interest of justice' would have no substantive legal content, but constitute a mere platitude covering a multitude of unreviewable rulings." *Id.*

### b. Ineffective Assistance of Counsel

"The Sixth Amendment to the United States Constitution, and section ten of article 1 of the Texas Constitution, guarantee individuals the right to assistance of counsel in a criminal prosecution." *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011) (citing U.S. CONST. amend. VI; TEX. CONST. art. 1, § 10). "The right to counsel requires more than the presence of a lawyer; it necessarily requires the right to effective assistance." *Id.* (citing *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970); *Powell v. Alabama*, 287 U.S. 45, 57 (1932)). "However, the right does not provide a right to

errorless counsel,[5] but rather to objectively reasonable representation." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984)).

"To prevail on a claim of ineffective assistance of counsel, an appellant must meet the two-pronged test established by the U.S. Supreme Court in *Strickland. . . .*" *Id.* "Appellant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense." *Id.* (citing *Strickland*, 466 U.S. at 689). "Unless appellant can prove both prongs, an appellate court must not find counsel's representation to be ineffective." *Id.* (citing *Strickland*, 466 U.S. at 687). "In order to satisfy the first prong, appellant must prove, by a preponderance of the evidence, that trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms." *Id.* "To prove prejudice, appellant must show that there is a reasonable probability, or a probability sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 687).

"An appellate court must make a 'strong presumption that counsel's performance fell within the wide range of reasonably professional assistance.'" *Id.* (quoting *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006) (citing *Strickland*, 466 U.S. at 689)). "In order for an appellate court to find that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record; the court must not engage in retrospective speculation." *Id.* (citing *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)). "'It is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence.'"

---

[5] *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006).

*Id.* at 142–43 (quoting *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007)). "When such direct evidence is not available, we will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined." *Id.* at 143 (citing *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)). "In making an assessment of effective assistance of counsel, an appellate court must review the totality of the representation and the circumstances of each case without the benefit of hindsight." *Id.* (citing *Robertson*, 187 S.W.3d at 483).

The court of criminal appeals "has repeatedly stated that claims of ineffective assistance of counsel are generally not successful on direct appeal and are more appropriately urged in a hearing on an application for a writ of habeas corpus." *Id.* (citing *Bone v. State*, 77 S.W.3d 828, 833 n.13 (Tex. Crim. App. 2002); *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002)); *see Ex parte Nailor*, 149 S.W.3d 125, 131 (Tex. Crim. App. 2004). "On direct appeal, the record is usually inadequately developed and 'cannot adequately reflect the failings of trial counsel' for an appellate court 'to fairly evaluate the merits of such a serious allegation.'" *Id.* (quoting *Bone*, 77 S.W.3d at 833).

### 3. Analysis

Because "[t]he two prongs of *Strickland* need not be analyzed in a particular order,[6] we decide whether appellant satisfied the prejudice prong,[7] which requires us to "ask whether there is a reasonable probability that the jury would have had a reasonable doubt as to [a]ppellant's guilt had . . . [Michael Estrada and Brianna Garza] appeared at trial. . . ." *Perez v. State*, 310 S.W.3d 890, 894 (Tex. Crim. App. 2010). In *Perez*, the

---

[6] *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011).

[7] *See Strickland v. Washington*, 466 U.S. 668, 697 (1984).

court of criminal appeals followed the guidance of *King v. State*, 649 S.W.2d 42 (Tex. Crim. App. 1983), in which the defendant "asserted ineffective assistance of counsel in part because no witnesses testified on his behalf." *Id.* (citing *King*, 649 S.W.2d at 44). The *Perez* court, quoting from *King*, stated that "the failure to call witnesses at the guilt-innocence and punishment stages is irrelevant absent a showing that such witnesses were available and appellant would benefit from their testimony." *Id.* (quoting *King*, 649 S.W.2d at 44).

Even though Estrada and Garza were available to testify at the trial of this case, appellant would not have benefited from their testimony. Estrada, when asked if he saw the shooting, stated, "Not really." Garza testified she saw Robali shoot the man who swung at him. Estrada testified he saw Robali trying to get into a vehicle while Garza testified she did not see him trying to get into a vehicle. Neither Estrada nor Garza could identify appellant as a participant in the fight. The State's evidence, however, showed appellant and Robali participated in the fight. Villarreal testified Robali shot Martinez, and Sardie testified appellant shot Martinez. Thus, the testimony of neither Estrada nor Garza would have exonerated appellant because their testimony was either irrelevant to appellant's culpability or repetitive of admitted testimony.

Accordingly, we do not see a reasonable probability that the testimony of either Estrada or Garza would have changed the result of appellant's trial. Ineffective assistance of counsel claims must be firmly founded in the record and not based on retrospective speculation. *See Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002). We conclude appellant has not shown by a preponderance of the evidence that

29

counsel's alleged "deficiency so compromised the proper functioning of the adversarial process that the trial court cannot be said to have produced a reliable result." *See Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011) (citing *Strickland*, 466 U.S. at 686). Therefore, we hold the trial court did not abuse its discretion by denying the motion for new trial. Issue nine is overruled.

## III. CONCLUSION

The judgment of the trial court is affirmed.


ROSE VELA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
12th day of July, 2012.