

# NUMBER 13-10-00381-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**ISRAEL ROBALI,**                                                                          **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                  **Appellee.**

### On appeal from the 148th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Vela
Memorandum Opinion by Justice Rose Vela**

Appellant, Israel Robali, and co-defendants, Anthony Hernandez, Alfredo Garza, and Juan Herrera, were tried together in a single trial. The jury convicted appellant of murder, a first-degree felony, *see* TEX. PENAL CODE ANN. § 19.02(b), (c) (West 2011), and aggravated assault with a deadly weapon, a second-degree felony. *See id.* § 22.02(a)(2), (b). The jury assessed concurrent sentences of life imprisonment and ten

years' imprisonment, respectively. In four issues, appellant argues: (1) the evidence is legally and factually insufficient to support his convictions; (2) he received ineffective assistance of counsel; (3) the trial court prevented his defense counsel from conducting general voir dire examination; and (4) his defense counsel had a conflict of interest. We affirm.

## I. BACKGROUND

In the evening of July 31, 2009, Brian Villarreal and his friends, Joel Pacheco, Isabel Martinez, and John Sardie went to Burlington Coat Factory in Corpus Christi. While inside the store, Pacheco had a confrontation with Anthony Hernandez. Thereafter, Villarreal and his friends went outside and saw Juan Herrera drive up with two passengers, Alfredo Garza and appellant. Garza asked Villarreal and his friends if they "had a problem." Villarreal testified that when Martinez approached their car, Herrera drove away and took a pipe out of the trunk. Herrera, Garza, and appellant walked toward Villarreal and his friends while Hernandez and a juvenile approached the four from behind. When appellant hit Pacheco, everybody started fighting. During the fight, Villarreal heard Herrera say, "Fuck these fools, blast them already, fuck them." Appellant pulled a gun from his pocket and shot Martinez. When Martinez tried to grab the gun, appellant shot him again. Undaunted, Martinez "threw" appellant over his shoulder. When appellant hit the ground, the gun, which appellant held, went off, striking Martinez again. Villarreal kicked the gun out of appellant's hand and started choking him, but stopped when he realized Martinez was dying.

2

Sardie testified he was fighting someone and "heard a shot and then I heard a second one and it shot me in the arm." He could not identify the person who shot him; however, when the prosecutor asked him if the person who shot him "was one of those three guys in the car [driven by Herrera]?", he said, "Yes." After getting shot, Sardie saw Herrera pick up a gun that was on the ground. When Herrera pointed it at Sardie, Sardie hid behind a truck. He testified that "I saw him [Herrera] shooting the gun after I ran behind the truck and I looked back." He stated he "saw Herrera" grab Martinez "from the back of his head and like pop, like leaned him over like that, on the side and just shot him three times."

Shortly before the fight started, Daniel Pulido was in his truck, which was parked outside Burlington Coat Factory. He saw four men leave the store and stand against a wall at the entrance to the store. About five minutes later, Herrera drove up in a blue car and stopped near the four men. After someone in the blue car made "signs with his hands," the men approached the car, which drove forward. Herrera and a passenger got out, and Herrera retrieved what appeared to be a silver-colored gun from the trunk. Herrera and his passengers started fighting with the four men, who were standing against the wall. Pulido testified he saw "Juan Herrera and Robali [appellant] fighting about two guys." After Pulido lost sight of the fight, he "heard about three or four rounds go off."

Officer Jason Rhodes heard a dispatch about the fight and stopped the suspect vehicle, which had five occupants—Alfredo Garza, Anthony Hernandez, appellant, O.H.,[1] and Herrera, the driver of the vehicle. When Officer Rhodes searched the vehicle, he

---

[1] Because this individual is a juvenile, we will not mention the first or last name.

found a handgun under the backseat, and he found a pipe and a bat in the trunk.

Ray Fernandez, M.D., the Nueces County Medical Examiner who performed Martinez's autopsy, testified Martinez's cause of death was multiple gunshot wounds. Martinez had a gunshot wound that went through his aorta. He also had gunshot wounds to the left back and to the left upper arm.

The forensic evidence showed that, because the bullets removed from Martinez's body had "insufficient detail," they could not be compared to test bullets fired from the .22 caliber pistol recovered from the car driven by Herrera. However, the bullets were consistent with being .22 caliber bullets. All of the casings recovered from the crime scene came from the .22 caliber pistol.

## II. DISCUSSION

### A. Sufficiency of the Evidence

In issue one, appellant contends the evidence is legally and factually[2] insufficient to support a jury finding that he intentionally and knowingly caused Martinez's death and that he intentionally, knowingly, and recklessly caused bodily injury to Sardie by use of a deadly weapon.

#### 1. Standard of Review

"The standard for determining whether the evidence is legally sufficient to support a conviction is 'whether, viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Johnson v. State*, No. PD-0068-11, 2012 WL 931980, at

---

[2] The court of criminal appeals has abolished factual-sufficiency review. *See Howard v. State*, 333 S.W.3d 137, 138 n.2 (Tex. Crim. App. 2011). Thus, we will only address appellant's legal-sufficiency challenges.

4

*1 (Tex. Crim. App. Mar. 21, 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original). In *Malik v. State*, the court of criminal appeals articulated the standard for ascertaining what the "essential elements of the crime" are; "they are 'the elements of the offense as defined by the hypothetically correct jury charge for the case.'" *Johnson*, 2012 WL 931980, at *1 (quoting *Malik*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The hypothetically correct jury charge is one that at least 'accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240). The court of criminal appeals "described the law 'as authorized by the indictment' to be 'the statutory elements of the offense . . . as modified by the charging instrument[.]'" *Id.* (quoting *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000)).

### 2. Applicable Law

A person commits murder "if he: (1) intentionally or knowingly causes the death of an individual; (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual; . . . ." TEX. PENAL CODE ANN. § 19.02(b)(1), (2). Assault is defined in section 22.01 of the penal code. Subsection (a) of that provision sets out three separate and distinct assaultive crimes, one of which is relevant to the present discussion: "(a) A person commits an offense if the person: (1) intentionally, knowingly, or recklessly causes bodily injury to another, . . . ." *Id.* § 22.01(a)(1). "'Bodily injury' means physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8). Section 22.02 of the penal code defines

5

aggravated assault as being an assault under section 22.01, "and the person: (1) causes serious bodily injury to another, including the person's spouse; or (2) uses or exhibits a deadly weapon during the commission of the assault." *Id.* § 22.02(a)(1), (2). "'Deadly weapon' means: (1) a firearm. . . ." *Id.* § 1.07(a)(17)(A).

### 3. The Law of Parties

Section 7.01 of the penal code provides that "[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." *Id.* § 7.01(a). Section 7.02 provides, in relevant part, that "[a] person is criminally responsible for an offense committed by the conduct of another if: . . . (2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense; . . . ." *Id.* § 7.02(a)(2).

### 4. Analysis

Shortly before the fight began, Herrera, Garza, and appellant stopped outside Burlington Coat Factory while Villarreal and his friends were outside the store. Villarreal stated that Herrera took a pipe out of the trunk, and Pulido testified Herrera took out what appeared to be a gun from the trunk. Afterwards, Herrera, Garza, and appellant approached Villarreal and his friends, and when appellant hit Pacheco, everybody started fighting. When Herrera said "blast them," appellant shot Martinez. When Martinez tried to grab the gun from appellant, he shot him again. When Martinez "threw" appellant over his shoulder, the gun, which appellant held, went off, striking Martinez. The medical evidence showed Martinez died from multiple gunshot wounds. Even though Sardie

6

testified Herrera shot Martinez, "[a]s factfinder, the jury is entitled to judge the credibility of witnesses, and can choose to believe all, some, or none of the testimony presented by the parties." *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). Viewing all of the evidence in the light most favorable to the verdict, we hold the evidence is legally sufficient for a rational jury to conclude beyond a reasonable doubt that appellant, acting as a principal or as a party, intentionally or knowingly caused the death of Martinez by use of a deadly weapon; i.e., a firearm.

In addition, Sardie testified that during the fight, he "heard a shot and then I heard a second one and it shot me in the arm." Even though he could not identify who shot him, when the prosecutor asked him if the person who shot him "was one of those three guys in the car [driven by Herrera]?", he said, "Yes." There was evidence showing that appellant was one of the occupants in the car driven by Herrera. In order to convict appellant of aggravated assault with a deadly weapon, the State was not required to prove he personally shot Sardie. Rather, the State merely had to prove he was acting as a party with the person who did in fact shoot him. Viewing all of the evidence in the light most favorable to the verdict, we hold the evidence is legally sufficient for a rational jury to conclude beyond a reasonable doubt that appellant, acting as a principal or as a party, intentionally, knowingly, or recklessly caused bodily injury to Sardie by use of a deadly weapon; i.e., by shooting him with a firearm. Issue one is overruled.

## B. Ineffective Assistance of Counsel

In issue two, appellant contends he was denied effective assistance of counsel during both phases of trial, because his defense counsel refused to call necessary and

material witnesses to corroborate his self-defense claim.

### 1. Standard of Review

"The Sixth Amendment to the United States Constitution, and section ten of Article 1 of the Texas Constitution, guarantee individuals the right to assistance of counsel in a criminal prosecution." *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011) (citing U.S. CONST. amend. VI; TEX. CONST. art. 1, § 10). "The right to counsel requires more than the presence of a lawyer; it necessarily requires the right to effective assistance." *Id.* (citing *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970); *Powell v. Alabama*, 287 U.S. 45, 57 (1932)). "However, the right does not provide a right to errorless counsel,[3] but rather to objectively reasonable representation." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984)).

"To prevail on a claim of ineffective assistance of counsel, an appellant must meet the two-pronged test established by the U.S. Supreme Court in *Strickland. . . ."* *Id.* "Appellant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense." *Id.* (citing *Strickland*, 466 U.S. at 689). "Unless appellant can prove both prongs, an appellate court must not find counsel's representation to be ineffective." *Id.* (citing *Strickland*, 466 U.S. at 687). "In order to satisfy the first prong, appellant must prove, by a preponderance of the evidence, that trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms." *Id.* "To prove prejudice, appellant must show that there is a reasonable probability, or a probability sufficient to undermine confidence in the outcome, that the result of the proceeding would

---

[3] *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006).

have been different." *Id.* (citing *Strickland*, 466 U.S. at 687).

"An appellate court must make a 'strong presumption that counsel's performance fell within the wide range of reasonably professional assistance.'" *Id.* (quoting *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006) (citing *Strickland*, 466 U.S. at 689)). "In order for an appellate court to find that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record; the court must not engage in retrospective speculation." *Id.* (citing *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)). "'It is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence.'" *Id.* at 142–43 (quoting *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007)). "When such direct evidence is not available, we will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined." *Id.* at 143 (citing *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)). "In making an assessment of effective assistance of counsel, an appellate court must review the totality of the representation and the circumstances of each case without the benefit of hindsight." *Id.* (citing *Robertson*, 187 S.W.3d at 483).

The court of criminal appeals "has repeatedly stated that claims of ineffective assistance of counsel are generally not successful on direct appeal and are more appropriately urged in a hearing on an application for a writ of habeas corpus." *Id.* (citing *Bone v. State*, 77 S.W.3d 828, 833 n.13 (Tex. Crim. App. 2002); *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002)); *see Ex parte Nailor*, 149 S.W.3d 125, 131 (Tex. Crim. App. 2004). "On direct appeal, the record is usually inadequately developed

9

and 'cannot adequately reflect the failings of trial counsel' for an appellate court 'to fairly evaluate the merits of such a serious allegation.'" *Id.* (quoting *Bone*, 77 S.W.3d at 833).

In the instant case, appellant argues his defense counsel was ineffective because he failed to call three necessary and material witnesses—Michael Estrada, Brianna Garza, and Joseph Calderon. He states these witnesses would have corroborated his self-defense strategy.

### 2. Hearing on Motion for New Trial

During the new-trial hearing, Michael Estrada testified that on the date in question, he and his front-seat passenger, Brianna Garza, turned into the Burlington Coat Factory parking lot and saw two men jump over the hood of their car. Both men started fighting with some other men. During the fight, the man who was fighting with appellant pulled "something" out of his pocket and went towards appellant, who was trying to get into a car that had pulled up. The man "attacked" appellant, who pushed him away. When Estrada "heard something pop," he looked back towards the fight and "saw that guy going towards" appellant. When the prosecutor asked Estrada, "Did Israel [appellant] shoot before or after that car got there?", he said, "After." However, when Estrada was asked if he had seen "the shooting itself", he said, "Not really."

Brianna Garza saw the men fighting and testified appellant "was getting beaten up." Then, appellant pulled a gun from his pants. She testified that when "[t]he taller guy swung at Robali [appellant], . . . he [appellant] shot him." When the taller man "swung again, . . . that's when the gun went off more than once."

Calderon did not testify at the new-trial hearing. However, appellant's affidavit, which is attached to his first amended motion for new trial, states that "[m]y defense was self-defense. Three witnesses—Mike Estrada, Briana [sic] Garza and Joseph Calderon—informed my attorney's investigator that they witnessed the incident and saw the victims holding a knife or shank."

Appellant's defense counsel did not testify at the new-trial hearing. However, Herrera's defense counsel testified that because Estrada and Garza tended to contradict each other, he decided not to call them as witnesses. He stated that Garza "had a lot of different things from what she claimed that she was able to see that just didn't fit into what we understood about the case. We just didn't consider her a very good witness from the standpoint of either credibility of what she was able to see." He also testified, "We had . . . additional witnesses . . . including . . . Michael Estrada, . . . . But after interviewing each of those groups of people they ended up having enough negative stuff in their testimony where the balance after we considered both sides of it just did not weigh in favor of calling them as witnesses." Later during the new-trial hearing, Herrera's defense counsel testified that Garza's "testimony doesn't help at all . . . because she certainly could have been testifying about things that she saw after Israel [appellant] picked up the gun off the ground. So we didn't consider her testimony valuable in assistance to [Juan Herrera] at all."

### 3. Analysis

Because "[t]he two prongs of *Strickland* need not be analyzed in a particular order,[4] we decide whether appellant satisfied the prejudice prong,[5] which requires us to "ask whether there is a reasonable probability that the jury would have had a reasonable doubt as to [a]ppellant's guilt had . . . [Michael Estrada, Joseph Calderon, and Brianna Garza] appeared at trial. . . ." *Perez v. State*, 310 S.W.3d 890, 894 (Tex. Crim. App. 2010). In *Perez*, the court of criminal appeals followed the guidance of *King v. State*, 649 S.W.2d 42 (Tex. Crim. App. 1983), in which the defendant "asserted ineffective assistance of counsel in part because no witnesses testified on his behalf." *Id.* (citing *King*, 649 S.W.2d at 44). The *Perez* court, quoting from *King*, stated that "the failure to call witnesses at the guilt-innocence and punishment stages is irrelevant absent a showing that such witnesses were available and appellant would benefit from their testimony." *Id.* (quoting *King*, 649 S.W.2d at 44).

In this case, the record does not show that Calderon was available to testify on appellant's behalf, and this Court can only speculate about how his testimony might have benefited appellant. Estrada and Garza were available to testify; however, appellant would not have benefited from their testimony. Estrada, when asked if he saw the shooting, stated, "Not really." Garza testified she saw appellant getting beat up and then saw him shoot the man who swung at him. Estrada testified he saw appellant trying to get into a vehicle while Garza testified she did not see him trying to get into a vehicle. During the State's case-in-chief, Brian Villarreal testified appellant shot Martinez after

---

[4] *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011).

[5] *See Strickland v. Washington*, 466 U.S. 668, 697 (1984).

12

Herrera said to "blast them." Thus, appellant has failed to prove that the testimony of Estrada, Garza, or Calderon would have caused the jury to believe appellant acted in self-defense. Accordingly, we do not see a reasonable probability that the testimony of these witnesses would have changed the result of either phase of appellant's trial. Ineffective-assistance-of-counsel claims must be firmly founded in the record and not based on retrospective speculation. *See Bone*, 77 S.W.3d at 835. We conclude appellant has not shown by a preponderance of the evidence that counsel's alleged "deficiency so compromised the proper functioning of the adversarial process that the trial court cannot be said to have produced a reliable result." *See Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011) (citing *Strickland*, 466 U.S. at 686). Issue two is overruled.

## C. General Voir Dire Examination

In issue three, appellant contends the trial court abused its discretion by not allowing his defense counsel to properly conduct general voir dire examination.

### 1. Background

A different attorney represented each defendant during the trial of this case. On May 10, 2010, the trial court conducted general voir dire examination of the venire members. At the end of general voir dire, the trial court addressed the attorneys for the State and the defendants as follows:

> Gentlemen, I have reviewed my general notes that a Judge relies upon in conducting voir dire. I have reviewed your notes. I may not have addressed every single word and matter in your notes, but I have addressed your notes. I now ask you if you have anything that you would like me to further address.

When the prosecutor stated, "[W]e have a quick general voir dire about a few things[,]" the trial court stated, "No, you're not going to do general voir dire. The next phase is individual examination of the panel members. Today we'll conclude with the general voir dire." When the trial court asked appellant's defense counsel, "[A]nything else that I should address during general voir dire?", he stated, "Judge, I need you to ask if anyone knows Isabel Martinez [the murder victim]." After the trial judge asked the venire members if they knew Martinez, appellant's defense counsel did not request the court to ask any more questions during general voir dire. Afterwards, the trial judge stated: "All of these attorneys submitted questions and notes to me, all of them, the State and the Defendant [sic] attorneys. . . . Ladies and gentlemen, that concludes general voir dire." After the trial judge said this, appellant's defense counsel did not object and did not advise the court he had any questions or information that the trial court needed to address during general voir dire.

Prior to the start of individual voir dire on May 12, 2010, the trial court announced to the attorneys for the State and the defendants the following:

> We had agreed that the Court would conduct voir dire. The Court asked and received notes from counsel on questions and topics to ask during that general voir dire. I made it clear to all counsel that general voir dire concluded at the end of that session on Monday May 10th, 2010, . . . .
>
> * * *
>
> I am now told that Counsel want to continue with general voir dire. The door to general voir dire is closed. We're done. Today we pick up with individual voir dire.

Afterwards, when appellant's defense counsel stated, "On behalf of Mr. Robali we're not ready based on that we don't think that the general voir dire covered pertinent

14

issues that are relevant to this case. . . ."  In reply, the trial court stated, "I announced clearly at the conclusion of the day Monday that we were concluding general voir dire and that's the Court's position today. . . .  I asked each counsel individually if they had any further matters, questions, issues on general voir dire, and each of you announced no."

### 2. Standard of Review

"The trial court has broad discretion over the process of selecting a jury."  *Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002) (citing *Allridge v. State*, 762 S.W.2d 146, 167 (Tex. Crim. App. 1988)); *Boyd v. State*, 811 S.W.2d 105, 115 (Tex. Crim. App. 1991); *see Barnard v. State*, 730 S.W.2d 703, 715 (Tex. Crim. App. 1987) (stating "the . . . [trial] court has discretion to control the manner of voir dire with the exception that in capital murder cases both the State and the defense must be accorded the right to examine each prospective juror individually.").  "A trial court's discretion is abused only when a proper question about a proper area of inquiry is prohibited."  *Barajas*, 93 S.W.3d at 38; *Dinkins v. State*, 894 S.W.2d 330, 345 (Tex. Crim. App. 1995).  "A question is proper if it seeks to discover a juror's views on an issue applicable to the case."  *Barajas*, 93 S.W.3d at 38 (citing *Smith v. State*, 703 S.W.2d 641, 643 (Tex. Crim. App. 1985)).  "An otherwise proper question is impermissible, however, if it attempts to commit the juror to a particular verdict based on particular facts."  *Id.* (citing *Standefer v. State*, 59 S.W.3d 177, 181 (Tex. Crim. App. 2001)).  "In addition, a voir dire question that is so vague or broad in nature as to constitute a global fishing expedition is not proper and may be prevented by the trial judge."  *Id.* at 39 (citing *Smith*, 703 S.W.2d at 645).  A trial court may also limit voir dire when a question is repetitious.  *Dinkins*, 894 S.W.2d at 345.

15

### 3. Analysis

Upon agreement by the attorneys, and after taking into consideration their "notes," the trial court conducted general voir dire. Toward the end of general voir dire examination, the trial judge asked the attorneys for the State and the defendants if they had anything they would like her to further address on general voir dire. Appellant's defense counsel stated, "Judge, I need you to ask if anyone knows Isabel Martinez." After the trial court asked the venire members if they knew Martinez, appellant's defense counsel did not request the court to ask any more questions on general voir dire. When the trial court told the venire members, "Ladies and gentlemen, that concludes general voir dire[,]" appellant's defense counsel did not object to the trial court's decision to end general voir dire, and he did not advise the court he still had questions for the court to ask on general voir dire. Thus, the trial court did not prohibit appellant's defense counsel from asking a proper question about a proper area of inquiry before the conclusion of general voir dire. Therefore, we hold the trial judge did not abuse her discretion when she decided to end general voir dire examination. *See Barajas*, 93 S.W.3d at 38; *Dinkins*, 894 S.W.2d at 345. Issue three is overruled.

### D. Conflict of Interest

In issue four, appellant contends his defense counsel had a conflict of interest with Herrera's defense counsel because both attorneys shared an office. Specifically, appellant asserts that without a waiver from himself, both attorneys worked in the same office and were working in concert on both appellant's and Herrera's trial strategies. Appellant asserts he was supposed to use a self-defense argument, but at trial, that

16

strategy was abandoned.   This change in strategy negated the motion for severance and allowed a recording containing hearsay to be entered into evidence.   Appellant contends that a prima facie conflict of interest is established because his attorney was working in the same office and in concert with Herrera's attorney without a waiver.

### 1. Standard of Review

The "standard . . . to analyze claims of ineffective assistance of counsel due to a conflict of interest is the rule set out in *Cuyler v. Sullivan*,[6] that is, the appellant must show that his trial counsel had an actual conflict of interest, and that the conflict actually colored counsel's actions during trial."   *Acosta v. State*, 233 S.W.3d 349, 356 (Tex. Crim. App. 2007).   In other words, "in order to prevail the appellant need show only that trial counsel 'actively represented conflicting interests' and that counsel's performance at trial was 'adversely affected' by the conflict of interest."   *Id.* at 353 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 349-50 (1980)).   In *Acosta*, the court of criminal appeals stated the "essential holding" of *Cuyler* is:

> [A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief.   But until a defendant shows that his counsel *actively represented conflicting interests*, he has not established the constitutional predicate for his claim of ineffective assistance.

*Id.* at 355 (emphasis added by *Acosta* court) (quoting *Cuyler*, 446 U.S. at 349–50). Based on this quotation from *Cuyler*, the *Acosta* court stated that "the appellant must show that an actual conflict of interest existed and that trial counsel actually acted on behalf of those other interests during the trial."   *Id.*   "'[A]n actual conflict of interest exists if counsel is required to make a choice between advancing his client's interest in a fair trial

---

[6]  *See Cuyler v. Sullivan*, 446 U.S. 335 (1980).

or advancing other interests (perhaps counsel's own) to the detriment of his client's interest.'" *Id.* (quoting *Monreal v. State*, 947 S.W.2d 559, 564 (Tex. Crim. App. 1997)) (internal quotes omitted).

### 2. Analysis

Our initial inquiry under the first prong of *Cuyler* is whether trial counsel was "burdened by an actual conflict of interest in th[is] case[.]" *Id.* Appellant's defense counsel did not testify at the new-trial hearing, and we cannot determine from the record before us whether counsel was required to make a choice between advancing appellant's interest in a fair trial or advancing other interests to the detriment of appellant's interest. Appellant has not shown that his defense counsel had any interests to advance other than appellant's. The mere fact that appellant's defense counsel and Herrera's defense counsel shared office space does not prove any actual conflict. Therefore, we hold appellant has failed to establish the first prong of *Cuyler*. Issue four is overruled.

### III. CONCLUSION

We affirm the judgment of the trial court.

ROSE VELA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
19th day of July, 2012.

18